FOREMOST PRO COLOR, INC., a California corporation, individually and on behalf of all other similarly situated, Plaintiff-Appellant,

v.

EASTMAN KODAK COMPANY, a New Jersey corporation, Defendant-Appellee.

No. 80–5629.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1982.

Decided Feb. 23, 1983.

Robert C. Fortune (argued), Downey, Cal., for plaintiff-appellant.

Neil M. Soltman (argued), Philip F. Westbrook, Thomas M. McCoy, O'Melveny & Myers, Los Angeles, Cal., for defendant-appellee.

Before GOODWIN, WALLACE, and PREGERSON, Circuit Judges.

WALLACE, Circuit Judge:

Foremost Pro Color, Inc. (Foremost) appeals from the district court's judgment for Eastman Kodak Co. (Kodak). The district court dismissed Foremost's antitrust claims for failure to state a claim upon which relief could be granted. The court then granted Kodak's motion for summary judgment on four of Foremost's five breach of contract claims. After Foremost voluntarily dismissed the remaining contract claim, the district court entered final judgment for Kodak. We affirm.

I

Kodak is the preeminent firm in the amateur photographic industry in this country, enjoying a dominant position in the markets for photographic film and conventional amateur still cameras. For example, over eighty percent of all photofinishing—the development of negatives and the printing of photographs—is conducted with Kodak-manufactured photofinishing equipment, photographic paper and chemicals.

Foremost is an authorized Kodak dealer and an independent photofinisher. As a dealer, Foremost has purchased photographic film, paper and chemicals from Kodak for resale to consumers. As a photofinisher, Foremost has purchased photographic equipment, paper and chemicals from Kodak and used them in the photofinishing process on orders placed by its consumer customers. Because Kodak is also a photofinisher, although at a significantly smaller level than in the past as a result of a 1954 consent decree negotiated with the United States Department of Justice, Foremost is both a photofinisher customer and competitor of Kodak.

Kodak's dominance of the photographic film and amateur still camera markets "is no doubt due to the firm's history of innovation." *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 269 (2d Cir.1979), cert. denied, 444 U.S. 1093, 100 S.Ct. 1061,

62 L.Ed.2d 783 (1980) (*Berkey*). It is one of those innovations which ignited the present controversy. Similar to *Berkey,* this case arises out of Kodak's undisclosed development and 1972 introduction of its then-newest line of cameras, the 110 "pocket instamatic," and its supporting photographic system. That system included a new generation of film (Kodacolor II), photographic paper, and photographic film processing and printing chemicals. The relevant history of the development and introduction of this system is well-outlined in *Berkey. Id.* at 276–78.

Foremost argues that this introduction of a new, integrated photographic system violated several provisions of the antitrust laws. First, it contends that the introduction constituted monopolization and attempted monopolization of the "amateur photographic market" in the United States in violation of section 2 of the Sherman Act, 15 U.S.C. § 2. Second, Foremost claims that because the 110 cameras could only use new Kodacolor II film and because this film could only be processed with the new papers and chemicals, Kodak implicitly and unlawfully tied the sale of cameras to film, film to chemicals, and chemicals to paper and film in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and section 3 of the Clayton Act, 15 U.S.C. § 14. Finally, Foremost maintains that Kodak discriminated against it in the supplying of technical photographic assistance and in the timeliness of deliveries, in violation of section 2(e) of the Robinson-Patman Act amendments to the Clayton Act, 15 U.S.C. § 13(e), and discriminated against it in prices and credit terms in violation of section 2(a) of the same statute, 15 U.S.C. § 13(a).

Although the facts of Foremost's contract claims are more complex, the legal issues they raise are easily analyzed. The jurisdiction of the district court over these state law claims rested upon diversity of citizenship. We give substantial deference to the construction of state law by a district judge sitting in that state and will reverse only if the district judge's interpretation of state law is clearly wrong. *See, e.g., Begay v.*

*Kerr-McGee Corp.,* 682 F.2d 1311 (9th Cir. 1982). We turn first to the entry of summary judgment on the breach of contract claims.

## II

Foremost's first contract claim was voluntarily dismissed and is not before us. Its second contract claim alleged that in August 1972, more than three years prior to the commencement of this action, Kodak breached a contract to "assist and supervise" Foremost's efforts to convert its photofinishing operations to utilize the new Kodak chemicals and paper required to develop film from the 110 instamatic camera. The district court granted summary judgment for Kodak on this claim, concluding that (1) the undisputed facts demonstrated that Kodak had not breached the alleged contract, and (2) in the absence of a written agreement, Foremost's claim was barred by California's two-year statute of limitations for actions based on non-sales, oral contracts. Cal.Civ.Proc.Code § 339 (West 1982).

■ We need not decide whether the district court ruled correctly on the issue of breach because we affirm on the alternative statute of limitations ground. Foremost argued to the district court, and on appeal, that the alleged contract underlying this claim was an August 1, 1972 letter from Kodak. Actually it was a newsletter from Kauffman, Kodak's Manager for Professional and Finishing Markets, announcing the development of the new chemicals and papers to the photofinishing trade. However, Fortune, the president of Foremost, testified that this letter was not the written contract pleaded in Foremost's complaint and that a similar document, the author of which he could not recall, was the contract pleaded. Foremost never produced this alleged written contract. Thus, the district court was not clearly wrong in granting summary judgment for Kodak on this claim pursuant to California's two-year statute of limitations for breach of contract claims

"not founded upon an instrument in writing." Cal.Civ.Proc.Code § 339.

Foremost argues that it had a "unilateral" or "implied" contract with Kodak for technical assistance, based upon Kodak's consistent offers of technical assistance to it and other photofinishers, to which the four-year limitations period of Cal.Com.Code § 2725 (West Supp.1982) applies. Even assuming that Kodak's conduct was sufficient to support such an implied contract, however, there remained no material question of fact. Section 2725 applies only to contracts for the sale of goods. *See id.* § 2725(1) (four-year limit for "any contract for sale"); *id.* § 2106(1) (defining "contract for sale"). The contract alleged and testified to by Foremost was a contract to provide "assistance and supervision" for Foremost's conversion of older equipment purchased from another manufacturer. Therefore, the alleged contract in no way involved the sale of goods by Kodak.

■ Foremost's third and fourth contract claims alleged that Kodak's untimely delivery of certain photofinishing equipment ordered by Foremost breached two written contracts. The undisputed facts show that the alleged contracts upon which Foremost relies in both instances are purchase order forms submitted by Foremost to Kodak through the latter's sales representatives, that only one could be located by the parties and it specified no delivery date, and that such order forms specifically state that all orders are "subject to acceptance" by Kodak. The district court concluded that there was no contract underlying either claim because the purchase orders were merely offers to buy, inviting Kodak's acceptance either by a prompt promise to ship or by prompt or current shipment under Cal.Com.Code § 2206(1)(b) (West 1964).

The district court was not clearly wrong in this application of section 2206(1)(b). The weight of authority is that purchase orders such as those at issue here are not enforceable contracts until they are accepted by the seller. *See* Restatement (Second)

of Contracts § 26 comment d (1981); 1 Corbin on Contracts § 24, at 73–74 (1963); *Zinni v. Royal Lincoln-Mercury, Inc.,* 84 Ill. App.3d 1093, 40 Ill.Dec. 511, 406 N.E.2d 212 (1980). Foremost has cited no California cases to the contrary. Since there was no promise to ship by Kodak, no contracts were formed until Kodak shipped the merchandise ordered, Cal.Com.Code § 2206(1)(b), and, therefore, there could be no late delivery. Foremost's argument that Kodak somehow promised to ship the merchandise by logging the purchase orders as "received" is without merit; this alone did not manifest Kodak's acceptance of Foremost's offer of purchase. *See* Restatement (Second) of Contracts § 19(2) (1981).

Foremost also argues that Cal.Com.Code § 2204(1) (West 1964) applies to these claims, as there was "conduct by both parties which recognizes the existence of such a contract." While it is true that section 2204(1) permits a court to find an enforceable contract in the absence of a written agreement, the agreement-making conduct identified by Foremost is that "the equipment was actually shipped and sold by Kodak." If this statute applied, there could be no contracts formed until Kodak shipped the merchandise. Obviously, Foremost could have no claim for late delivery based upon a failure to deliver the goods before the contracts were formed.

 Foremost's fifth and last contract claim alleged that Kodak breached a May 1, 1973 written agreement in which it promised to advise and assist Foremost in converting its photofinishing facilities to permit it to process the new 110 Kodacolor II film. The contract Foremost produced was an "information circular" distributed by Kauffman to the photofinishing trade. The district court granted summary judgment for Kodak on the ground, among others, that this claim was barred by California's two-year statute of limitations for actions based on non-sales, oral contracts. Cal.Civ.

Proc.Code § 339 (West 1982). We agree. Trade circulars, catalogs and advertisements are uniformly regarded as mere preliminary invitations which create no power of acceptance in the recipient. *See, e.g.,* 1 Corbin on Contracts, *supra,* § 28; *Lonergan v. Scolnick,* 129 Cal.App.2d 179, 182, 276 P.2d 8 (1944). Based upon this settled law, the district court correctly concluded that there remained no material question of fact as to whether the alleged agreement had been embodied in a written contract. As there was no written contract in this claim, it is barred by the two-year statute of limitations for oral contracts.

### III

The district court dismissed Foremost's antitrust claims for failure to state a claim upon which relief can be granted. Fed.R. Civ.P. 12(b)(6). In reviewing this dismissal, we must accept as true all the well-pleaded allegations of the complaint and can affirm only if it appears with certainty that Foremost would not be entitled to relief under any set of facts which might be proved in support of its claims. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980). The dismissal is a ruling on a question of law and is therefore freely reviewable on appeal. *Halet v. Wend Investment Co.,* 672 F.2d 1305, 1309 (9th Cir.1982).

Foremost's seventh claim alleged that Kodak unlawfully tied the sale of the several distinct components of the 110 system in violation of section 1 of the Sherman Act and section 3 of the Clayton Act, and its eighth claim alleged monopolization and attempted monopolization in violation of section 2 of the Sherman Act. We turn first to the charges of tying.

### A.

Foremost's third amended complaint[1] alleged that because "the new Kodacolor II

---

1. The original complaint alleged five contract and three antitrust claims. One antitrust claim was dismissed voluntarily, and the remaining two were dismissed for failure to state claims

for relief. The first amended complaint realleged the two antitrust claims previously dismissed, added three new ones, and realleged all five contract claims. Pursuant to Fed.R.Civ.P.

film ... was not compatible with any of the then existing film processing procedures or chemical solutions," and because the new "chemistry was not compatible with the then existing ... paper, [Foremost] was required to discard its complete inventory of the old paper and chemistry and purchase the new ... papers and ... chemistry." Foremost alleged that this amounted to the sale of commodities "on an implied contract, condition, agreement or understanding that [Foremost] would purchase other photographic commodities manufactured and sold by [Kodak]." As Foremost has phrased it on appeal, this implied condition, agreement or understanding arose because "whenever Foremost purchased one Kodak product, it *necessarily had to purchase additional Kodak commodities*" (emphasis in original).

■ Tying arrangements have long been considered *per se* unlawful under section 1 of the Sherman Act. *Northern Pacific Railway Co. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). A tying arrangement is an agreement by a party to sell one product only on the condition that the buyer also purchase a different or "tied" product. *Id.; Yentsch v. Texaco, Inc.,* 630 F.2d 46, 56 (2d Cir.1980). In order to establish an unlawful tying arrangement,[2] a plaintiff must demonstrate the existence of two distinct products or services, that the sale of the "tying" product or service is conditioned on the purchase of the "tied" product or service, that the defendant has "sufficient economic power" in the market for the tying product to appreciably restrain competition in the market for the tied product, and that the amount of commerce involved in the market for the tied product is "not insubstantial." *Portland Retail Druggists Association v. Kaiser Foundation Health Plan,* 662 F.2d 641, 648 (9th Cir.1981); *Community Builders, Inc. v. City of Phoenix,* 652 F.2d 823, 830 (9th Cir.1981); *Moore v. Jas. H. Matthews & Co.,* 550 F.2d 1207, 1212 (9th Cir.1977). A significant element of an illegal tying arrangement is coercion by the seller, i.e., the seller must condition the sale of the tying product on the buyer's purchase of the tied product. *See Northern Pacific Railway Co. v. United States, supra,* 356 U.S. at 5–6, 10, 78 S.Ct. at 518–520; *Times-Picayune Publishing Co. v. United States,* 345 U.S. 594, 605, 73 S.Ct. 872, 878, 97 L.Ed. 1277 (1953); L. Sullivan, *Handbook of the Law of Antitrust* 431 (1977). If the buyer is free to take either product by itself, "there is no tying problem." *Northern Pacific Railway Co. v. United States, supra,* 356 U.S. at 6 n. 4, 78 S.Ct. at 518 n. 4. "Some modicum" of involuntariness or coercion is thus essential to the existence of a *per se* illegal tie-in. *See, e.g., Betaseed, Inc. v. U and I Inc.,* 681 F.2d 1203, 1215 (9th Cir.1982); *Hirsh v. Martindale-Hubbell, Inc.,* 674 F.2d 1343, 1347 (9th Cir.1982); *Sobrato v. Prudential Insurance Co. of America,* 632 F.2d 786, 787 (9th Cir.1980).

When these prerequisites are met, tying arrangements are illegal in and of themselves, without any requirement that the plaintiff make a showing of unreasonable competitive effect. *Fortner Enterprises,*

12(b)(6), the district court dismissed all the antitrust claims, with leave to amend, and thus did not rule on Kodak's alternative motion for summary judgment on the antitrust claims. The same process was repeated in the second and third amended complaints, although the third amended complaint contained only four antitrust claims and the contract claims. After the district court dismissed the antitrust claims, Foremost attempted to appeal the order of dismissal without complying with the requirements of Fed.R.Civ.P. 54(b). We dismissed that appeal for lack of jurisdiction. The jurisdictional defect was cured when, after summary judgment on the contract claims,

Foremost dismissed its last remaining contract claim, the district court entered judgment for Kodak, and Foremost filed a timely notice of appeal.

2. The slight differences between the elements of a tying violation under section 1 of the Sherman Act and section 3 of the Clayton Act, *see Moore v. Jas. H. Matthews & Co.,* 550 F.2d 1207, 1214 (9th Cir.1977), are not relevant to this case. The rule stated in the text, however, applies to section 3 only if both the tying and tied items are "commodities." 15 U.S.C. § 14. They are in this case.

*Inc. v. United States Steel Corp.*, 394 U.S. 495, 498, 89 S.Ct. 1252, 1256, 22 L.Ed.2d 495 (1969). The principal evil of the tying arrangement, that which has traditionally justified its inclusion in the *per se* category, is that it denies competitors access to the market for the tied product not because the party imposing the arrangement necessarily has a superior product in that market, but rather because of the leverage exerted as a result of its economic power in the market for the tying product and the demand for the tying product.[3] *See Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 375 (5th Cir.1977); *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 47 (9th Cir.1971), *cert. denied*, 405 U.S. 955, 92 S.Ct. 1173, 31 L.Ed.2d 232 (1972). Thus, competition in the market for the tied product is severely restrained because competitors "cannot offer their products on an equal basis" with the party imposing the tying arrangement. *Moore v. Jas. H. Matthews & Co., supra,* 550 F.2d at 1212.

■ Of course, conduct which does not meet the requirements of the *per se* prohibition against tying arrangements may still constitute a violation of section 1 of the Sherman Act under the "rule of reason" test. *Fortner Enterprises, Inc. v. United States Steel Corp., supra,* 394 U.S. at 499–500, 89 S.Ct. at 1256–1257; *Phonetele, Inc. v. American Telephone & Telegraph Co.,* 664 F.2d 716, 738 (9th Cir.1981). But Foremost has not challenged the alleged tying arrangement under the rule of reason.

Thus, the dispositive question before us is whether, under the *per se* rule, Foremost adequately pleaded the requisite coercion in its complaint.

■ Although the complaint boldly asserts that the purchase of the tied products was "required," that single word is insufficient to support even an inference of the necessary coercion. *See Sargent-Welch Scientific Co. v. Ventron Corp.,* 567 F.2d 701, 708–09 (7th Cir.1977), *cert. denied*, 439 U.S. 822, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). Foremost did not allege that there existed an express requirement to purchase the 110 components as a package, that Kodak threatened to terminate film sales if Foremost did not also purchase paper and chemicals, or that a condition of being an authorized dealer of 110 cameras was the purchase of 110 film, paper and chemicals. Rather, as the complaint itself explains, the reason Foremost insists that it was required to purchase new film, chemicals and paper was that the newly introduced 110 film could not be processed with the then existing technology and these new products were necessary to satisfy consumer demand for 110 products and to process 110 photofinishing orders placed by its customers. Thus, Foremost's complaint pointedly refrains from alleging that Kodak itself required the purchase of film as a *condition* of the sale of cameras, or required the purchase of chemicals and paper as a *condition* of the sale of film. Coercion for purposes of the *per se* rule means "a product sold on

---

**3.** Other justifications of the *per se* prohibition have been suggested. *See Hirsh v. Martindale-Hubbell, Inc.,* 674 F.2d 1343, 1348–49 (9th Cir. 1982); *Moore v. Jas H. Matthews & Co., supra,* 550 F.2d at 1212–13. However, despite the fact that some commentators and economists have criticized the leverage justification mentioned in the text, *see* R. Bork, *The Antitrust Paradox* 373 (1978), it is that theory on which the Supreme Court has consistently justified the *per se* tying rule from *Northern Pacific* to *Fortner.* While commentators may certainly assist courts in developing legal standards to implement the antitrust laws, *see William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 668 F.2d 1014, 1061–63 (9th Cir.1981) (Wallace, J., dissenting from denial of rehearing en banc), as of now the Supreme Court has foreclosed

our developing new theories by teaching that "[t]here is general agreement . . . that the fundamental restraint against which the tying proscription is meant to guard is the use of power over one product to attain power over another, or otherwise to distort freedom of trade and competition in the second product." *Fortner Enterprises, Inc. v. United States Steel Corp.,* 394 U.S. 495, 512, 89 S.Ct. 1252, 1263, 22 L.Ed.2d 495 (1969) (White, J., dissenting); *see id.* at 498–99, 89 S.Ct. at 1256 (majority opinion), *quoting Northern Pacific Railway Co. v. United States,* 356 U.S. 1, 5–6, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958); *see also United States Steel Corp. v. Fortner Enterprises, Inc.,* 429 U.S. 610, 617–18 & n. 8, 97 S.Ct. 861, 866 & n. 8, 51 L.Ed.2d 80 (1977).

the condition that the buyer also purchase a different or tied product or at least that the buyer agrees not to purchase the product from any other supplier." *Betaseed, Inc. v. U and I Inc., supra,* 681 F.2d at 1222 n. 35. In the absence of an allegation that the purchase of the alleged tied products was required as a condition of sale of the alleged tying products, rather than as a prerequisite to practical and effective use of the tying products, Foremost's complaint failed to plead the coercion essential to a *per se* unlawful tying arrangement.[4]

Although liberally sprinkled with the word "required," Foremost's tying allegation basically involves the so-called technological tie. In other words, because the new film could not be processed with the old chemicals, and because the needed new photographic paper similarly could not be processed with the old chemicals, it was necessary to purchase an entire package of film, chemicals and paper. We do not believe that, standing alone, such technological interrelationship among complementary products is sufficient to establish the coercion essential to a *per se* unlawful tying arrangement. Indeed, such a rule could become a roadblock to the competition vital for an ever expanding and improving economy. Product innovation, particularly in such technologically advancing industries as the photographic industry, is in many cases the essence of competitive conduct. Therefore, we decline to place such technological ties in the category of economic restrictions deemed *per se* unlawful by *Northern Pacific* and its progeny. *See Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 49–51 & 50 n. 16, 97 S.Ct. 2549, 2557–2558 & 2557 n. 16, 53 L.Ed.2d 568 (1977); *Betaseed, Inc. v. U and I Inc., supra,* 681 F.2d at 1215.

Nor are the allegations that the new 110 film, chemicals and paper were incompatible with the products offered by Kodak's competitors sufficient to support a *per se* unlawful tie-in. Quite obviously, a firm that pioneers new technology will often introduce the first of a new product type along with related, ancillary products that can only be utilized effectively with the newly developed technology. Until other, less technologically advanced competitors procure licenses or otherwise develop ancillary products that are compatible with the new product, the technological leader will be faced with no present competition in the newly developed product market. The essence of a *per se* unlawful tying arrangement, however, is that it *forecloses* competition in the market for the tied product or products. The creation of technological incompatibilities, without more, does not foreclose competition; rather, it increases competition by providing consumers with a choice among differing technologies, advanced and standard, and by providing competing manufacturers the incentive to enter the new product market by developing similar products of advanced technology. Any short-run absence of competition in the market for the technologically tied product could just as likely be due to the unwillingness or inability of competitors to devote sufficient economic resources to match the pace of technological development set by the industry's leader, as to the abuse of market power by that dominant firm. Thus, the *per se* rule does not logically fit and should not be applied. It is clear that a mere technological tie does not present the competitive evils which the *per se* prohibition of tying arrangements is designed to prevent. *See Kentucky Fried Chicken Corp. v. Diversified Packaging Corp., supra,* 549 F.2d at 378–79.

■ As a general rule, therefore, we hold that the development and introduction

---

4. Under the facts alleged in the complaint, there could not as a matter of law be the sort of implicit coercion discussed in *Moore v. Jas. H. Matthews & Co., supra,* 550 F.2d at 1217, because Foremost was not forced to "accept the tied item and forego possibly desirable substitutes." Since the complaint alleges that, when the 110 system was introduced, no competing manufacturers produced chemicals and papers compatible with Kodacolor II film, there could have been no substitutes that Foremost or other photofinishing customers were foreclosed from purchasing.

of a system of technologically interrelated products is not sufficient alone to establish a *per se* unlawful tying arrangement even if the new products are incompatible with the products then offered by the competition and effective use of any one of the new products necessitates purchase of some or all of the others. Any other conclusion would unjustifiably deter the development and introduction of those new technologies so essential to the continued progress of our economy.

Foremost's tying claim alleged only the introduction of technologically related components incompatible with existing products offered by the competition. It did not allege that the dominant purpose motivating Kodak's design and introduction of the 110 system was to compel purchase of the entire system as a package, rather than to achieve the legitimate goal of marketing new, technologically superior products designed to satisfy consumer demand for smaller, pocket-sized cameras. Therefore, the complaint failed to state a claim for relief predicated on unlawful tying.

### B.

Foremost incorporated its tying allegations into its eighth claim, which charges monopolization and attempted monopolization in violation of section 2 of the Sherman Act. In this claim, Foremost's complaint alleged that Kodak's dominance of the "amateur photographic market" was the result of its "continually researching and developing new photographic products," that by introducing new products Kodak would "render[ ] obsolete existing competitive products, and . . . regain[ ] . . . the dominant share of the amateur photographic market," and that Kodak "perpetrated certain acts" in the course of its monopolization and attempt to monopolize, including developing new products "that are incompatible with then existing photographic products and photofinishing equipment[,] . . . withholding . . . new . . . products . . . from the amateur photographic market until competition . . . force[d] the introduction of these products[,] . . . [and] developing and marketing its 110 [system] in such a manner that [Foremost] was required to purchase new paper, chemistry and photofinishing equipment to enable it to photofinish 110 size film and Kodacolor II film." Foremost also alleged that, as an "effect" of the violations asserted, Kodak "has obtained the dominant share of the amateur photographic market . . . [and] has secured the power to control prices and to exclude . . . actual and potential competition" in that market. We discuss first the tying allegations.

■ Because the conduct Foremost alleged in support of its section 1 tying claim is not anticompetitive, it is of no assistance to Foremost's efforts to state a claim for relief for monopolization or attempted monopolization, both of which require at least some allegation of anticompetitive conduct. For example, to state a claim for relief for monopolization, the plaintiff must allege (1) the possession of monopoly power in the relevant market, (2) the "willful acquisition or maintenance" of that power, and (3) causal antitrust injury. *E.g., Forro Precision, Inc. v. IBM Corp.,* 673 F.2d 1045, 1058 (9th Cir.1982). It is the second element, the conduct element, which distinguishes lawful possession of monopoly power from unlawful possession of monopoly power. Section 2 of the Sherman Act proscribes "monopolization"; it does not render unlawful all monopolies. Therefore, we have recently reemphasized that for purposes of a monopolization claim, "willful acquisition or maintenance [of monopoly power] means that the monopolist must have 'engaged in "willful" acts directed at establishing or retaining its monopoly, "as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." ' " *Phonetele, Inc. v. American Telephone & Telegraph Co., supra,* 664 F.2d at 739–40.

■ Similarly, in order to state a claim for attempted monopolization under section 2, a plaintiff must allege (1) specific intent

to control prices or destroy competition in the relevant market, (2) predatory or anticompetitive conduct directed to accomplishing the unlawful purpose, and (3) a dangerous probability of success. *Janich Brothers, Inc. v. American Distilling Co.,* 570 F.2d 848, 853 (9th Cir.1977), *cert. denied,* 439 U.S. 829, 99 S.Ct. 103, 58 L.Ed.2d 122 (1978); *Ernest W. Hahn, Inc. v. Codding,* 615 F.2d 830, 845 (9th Cir.1980); *California Computer Products, Inc. v. IBM Corp.,* 613 F.2d 727, 736 (9th Cir.1979). In this circuit, both the requisite specific intent and dangerous probability of success may, in appropriate cases, be inferred from the existence of predatory or anticompetitive conduct. *Janich Brothers, Inc. v. American Distilling Co., supra,* 570 F.2d at 853–54. However, specific intent to monopolize, and hence an inference of dangerous probability of success, cannot be inferred from conduct alone unless that conduct is predatory or anticompetitive and forms the basis for a substantial claim of restraint of trade. *See Janich Brothers, Inc. v. American Distilling Co., supra,* 570 F.2d at 857; *Greyhound Computer Corp. v. IBM Corp.,* 559 F.2d 488, 505 (9th Cir.1977), *cert. denied,* 434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978).

■ As we indicated earlier, the introduction of technologically related products, even if incompatible with the products offered by competitors, is alone neither a predatory nor anticompetitive act. Foremost's tying allegations, therefore, are insufficient to aver the requisite willful acquisition or maintenance element of a monopolization claim or the anticompetitive or predatory conduct element of an attempted monopolization claim. Four of the six acts that Foremost alleged Kodak perpetrated in attempting to monopolize and monopolizing the "amateur photographic market" related to these tying allegations. We are left, therefore, with only the two remaining anticompetitive acts pleaded: first, that the 110 system was incompatible with then existing photographic products and photofinishing equipment, and second, that Kodak withheld the 110 system from the amateur

photographic market "until competition from other manufacturers force[d] the introduction" of the system.

It is useful to point out that Foremost's complaint did not attempt to state a claim for relief for monopolization or attempted monopolization on the ground that Kodak's failure to "predisclose" its 110 format to the competition constituted willful maintenance of its monopoly power or predatory or anticompetitive conduct in an attempt to monopolize the market. *See Berkey, supra,* 603 F.2d at 279–85. Nor did Foremost's complaint distinguish among the various product markets which comprise the "amateur photographic market." Therefore, there is no occasion to address whether Foremost's complaint stated a valid claim for relief on the ground that Kodak abused its monopoly power in the film market or used that power as a lever to create, or attempt to create, a monopoly in the markets for amateur still cameras or photographic chemicals or paper. *See id.* at 275–76, 284, 292; *see also Phonetele, Inc. v. American Telephone & Telegraph Co., supra,* 664 F.2d at 739; *Sargent Welch Scientific Co. v. Ventron Corp., supra,* 567 F.2d at 711–12. In the absence of either of these allegations, we hold that Foremost's complaint failed to state a claim upon which relief can be granted for monopolization or attempted monopolization under section 2 of the Sherman Act.

■ For us to hold that Foremost's allegations were sufficient as a matter of law to satisfy the conduct element of section 2 would be contrary to the very purpose of the antitrust laws, which is, after all, to foster and ensure competition on the merits. "It is the possibility of success in the marketplace, attributable to superior performance, that provides the incentives on which the proper functioning of our competitive economy rests." *Berkey, supra,* 603 F.2d at 281. A monopolist, no less than any other competitor, is permitted and indeed encouraged to compete aggressively on the merits, and any success it may achieve solely

through "the process of invention and innovation" is necessarily tolerated by the antitrust laws. *Id., quoting United States v. United Shoe Machinery Corp.,* 110 F.Supp. 295, 344 (D.Mass.1953), *aff'd,* 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910 (1954) (per curiam); *see* 3 P. Areeda & D. Turner, *Antitrust Law* ¶ 626b (1978). Foremost's complaint alleged nothing more than conduct of this sort, conduct which is lawful whether or not the defendant enjoys monopoly power in the relevant market. *See Sargent-Welch Scientific Co. v. Ventron Corp., supra,* 567 F.2d at 712 (a monopolist "is not forbidden from improving his efficiency in manufacturing or marketing, even though the effect of doing so will be to maintain or improve his sales"). Indeed, the complaint expressly alleged that Kodak "has dominated the amateur photographic market by continually researching and developing new photographic products."

It is of no legal import that Foremost chooses to characterize the technological incompatibilities of the 110 system with the products offered by Kodak's competitors in 1972, and Kodak's alleged delay in introducing the 110 system, as a form of technological predation. Even assuming that Kodak enjoyed monopoly power in the amateur photographic market, as Foremost alleged in its complaint, Kodak "had the right to redesign its products to make them more attractive to buyers—whether by reason of lower manufacturing cost and price or improved performance." *California Computer Products v. IBM Corp., supra,* 613 F.2d at 744. The antitrust laws did not impose a duty on Kodak to assist Foremost, other photofinishers, or manufacturers of competing cameras, film, paper or chemicals to "survive or expand." *Id. See ILC Peripherals Leasing Corp. v. IBM Corp.,* 458 F.Supp. 423, 439 (N.D.Cal.1978) (discussing technological innovations by alleged monopolist), *aff'd sub nom., Memorex Corp. v. IBM Corp.,* 636 F.2d 1188 (9th Cir.1980) (per curiam), *cert. denied,* 452 U.S. 972, 101 S.Ct. 3126, 69 L.Ed.2d 983 (1981). Kodak need not have "constricted its product development so as to facilitate sales of rival prod-

ucts." *California Computer Products v. IBM Corp., supra,* 613 F.2d at 744.

We do not, of course, hold that product innovation is immune from antitrust scrutiny and may never provide the requisite conduct element in support of a claim for monopolization or attempted monopolization under section 2 of the Sherman Act. In all cases, however, "it is not the product introduction itself, but some associated conduct, that supplies the violation." *Berkey, supra,* 603 F.2d at 286 n. 30. Here, the only "associated conduct" pleaded by Foremost in support of its section 2 claim is the creation of technological incompatibilities and Kodak's alleged delay in bringing the 110 system to the market. We have discussed the first in sufficient detail already. As to the second, it seems clear that even a monopolist cannot *exclude* or *restrain* competition in its own market or related markets by delaying the introduction of new, technologically advanced products. In this case, for example, any delay by Kodak in introducing the 110 system could have worked only to the advantage of photofinishers and competing manufacturers. Prior to the introduction of the 110 system, it is obvious that Foremost, along with all other photofinishers, was able to choose among several technologically compatible products offered by Kodak and many of its smaller competitors.

It is appropriate to emphasize that as a general rule, "any firm, even a monopolist, may ... bring its products to market whenever and however it chooses." *Berkey, supra,* 603 F.2d at 286 (footnote omitted). Without more, it is not unlawful for any competitor in any market to delay the introduction of a new product or an entire line of new products until, as Foremost alleged in this case, the competition forces such introduction. In order to state a claim for relief under section 2, product introduction must be alleged to involve some associated conduct which constitutes an anticompetitive abuse or leverage of monopoly power, or a predatory or exclusionary means of attempting to monopolize the

relevant market, rather than aggressive competition on the merits. That the dominant firm in any market may through technological innovation expand its market share, increase consumer brand identification, or create demand for new products is perfectly consistent with the competitive forces that the Sherman Act was intended to foster. The antitrust laws were not intended to invalidate all competitive practices tending to improve a firm's market position. *Hirsh v. Martindale-Hubbell, Inc., supra,* 674 F.2d at 1348.

## IV

We now discuss the Robinson-Patman issues. In its sixth claim, Foremost alleged that Kodak violated section 2(e) of the Robinson-Patman Act, 15 U.S.C. § 13(e), by "failing to deliver . . . photofinishing equipment orders within the same sixty-day . . . schedule that [was] given to [Foremost's] competitors" and by "providing technical assistance and services [for the] conversion of . . . photofinishing equipment" only to Foremost's competitors. Foremost alleged in its ninth claim that Kodak violated section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a), by "offering price reductions to its other customers in competition with [Foremost], while refusing to offer the same price reductions to [Foremost] on a proportionately equal basis." Specifically, Foremost alleged that Kodak allowed its other customers to order a six-month supply of photographic paper and pay for the order in six monthly installments but did not offer the same terms to Foremost. The district court dismissed these claims for failure to state a claim for relief.

## A.

Section 2(e) of the Robinson-Patman Act prohibits discrimination against "purchasers of a commodity bought for resale" by offering or furnishing "services or facilities" that are not "accorded to all purchasers on proportionately equal terms." 15 U.S.C. § 13(e). Kodak argues that the "services or facilities" to which section 2(e) applies are only advertising and promotional services, and thus that neither deliveries of nor technical assistance with respect to photofinishing equipment are covered by the statute. There is a split among the circuits concerning whether the timeliness of delivery services is a form of discrimination cognizable under section 2(e). *Compare, e.g., L & L Oil Co. v. Murphy Oil Corp.,* 674 F.2d 1113, 1119 (5th Cir.1982) (section 2(e) does not cover discrimination in deliveries), *with Centex-Winston Corp. v. Edward Hines Lumber Co.,* 447 F.2d 585 (7th Cir.1971) (section 2(e) covers discrimination in deliveries), *cert. denied,* 405 U.S. 921, 92 S.Ct. 956, 30 L.Ed.2d 791 (1972). We have criticized the *Centex-Winston* position, but have not yet decided whether discrimination in the timeliness of deliveries may constitute discrimination in "services or facilities" under section 2(e). *See Purdy Mobile Homes, Inc. v. Champion Home Builders Co.,* 594 F.2d 1313, 1318 (9th Cir.1979) (*Purdy*). We need not do so here.

As a general rule, practices related to the resale of commodities are cognizable under section 2(e), while practices related to the original sale of commodities are cognizable under section 2(a). Thus, section 2(e) "appl[ies] only to services or facilities connected with the *resale* of the product by the purchaser." *Purdy, supra,* 594 F.2d at 1317 (emphasis added). *See also Corn Products Refining Co. v. FTC,* 324 U.S. 726, 744, 65 S.Ct. 961, 969, 89 L.Ed. 1320 (1945). Foremost's complaint does not allege that Foremost resold the photofinishing equipment whose delivery was supposedly delayed, nor does it allege that it resold the photofinishing equipment for which Kodak allegedly provided technical assistance only to its other customers, competitors of Foremost. Foremost's failure to allege resale of the photofinishing equipment, the commodities with respect to which the alleged discrimination in deliveries and technical services occurred, is a failure as a matter of law to allege a crucial element of a section 2(e) violation. *Purdy, supra,* 594 F.2d at 1317.

Foremost never comes to grips with this fatal flaw. Instead, Foremost argues that its complaint states a section 2(e) claim because it resells *other* commodities purchased from Kodak—photographic paper, film and chemicals—in its capacity as an authorized dealer. It is true, as Foremost argues, that section 2(e) covers commodities bought for resale "with or without processing." 15 U.S.C. § 2(e). In addition, the Supreme Court has recognized that commodities may undergo physical alterations during processing and yet still be purchased for resale within the meaning of section 2(e). *See Corn Products Refining Co. v. FTC, supra,* 324 U.S. at 744, 65 S.Ct. at 969 (section 2(e) covers discrimination in services and facilities "in all cases where the commodity is to be resold, whether in its original form or in a processed product"). However, that Foremost alleged that it resold photographic chemicals and paper to its customers in connection with the sale of processed photographs is not sufficient. Even if these specific commodities were purchased for resale within the meaning of *Purdy,* Foremost did not contend that it resells the photofinishing equipment involved in the alleged discrimination. Thus, it has failed to state a claim for relief under section 2(e).

### B.

Foremost contends that its section 2(a) allegations demonstrate that Kodak violated this portion of the Robinson-Patman Act by (1) offering a twelve percent price reduction to competitors of Foremost purchasing a six-month supply of photographic paper, and (2) permitting competitors of Foremost to defer payment on a six-month bulk purchase of paper but not offering the same terms to Foremost. Kodak argues that these allegations plead only credit discrimination, which, it contends, is not a form of indirect price discrimination cognizable under section 2(a). *See Craig v. Sun Oil Co.,* 515 F.2d 221, 224 (10th Cir.1975), *cert. denied,* 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976). However, Foremost has conceded in its reply brief that it "*does not* allege that Kodak's discrimination toward it as to [the deferred payment credit plan] violates Section 2(a)." We need not decide, therefore, whether to adopt *Craig.*

Foremost argues that its first allegation concerning a twelve percent price reduction is sufficient to state a prima facie claim for relief under section 2(a). Kodak, on the other hand, argues that Foremost has failed to allege at least two completed, contemporaneous sales by the same seller. *See, e.g., Bruce's Juices, Inc. v. American Can Co.,* 330 U.S. 743, 755, 67 S.Ct. 1015, 1020, 91 L.Ed. 1219 (1947); *Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 677 (9th Cir.1975). This element of a prima facie section 2(a) violation stems directly from the language of the statute referring to discriminations "in price between different *purchasers.*" 15 U.S.C. § 13(a) (emphasis added). Clearly, a mere "offer" to sell to competing customers at different prices does not satisfy this requirement of two actual, contemporaneous sales. *See Shaw's Inc. v. Wilson-Jones Co.,* 105 F.2d 331, 333 (3d Cir.1939).

We need not decide whether Foremost's complaint alleges the requisite two contemporaneous sales to competing purchasers at different prices because it suffers from another flaw fatal to its section 2(a) claim. Section 2(a) expressly provides that such price discriminations are unlawful only "where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination ...." 15 U.S.C. § 13(a). In this case, therefore, it was incumbent upon Foremost to allege that the price discrimination "may ... substantially ... lessen competition" in the photofinishing market. *Id.*

It is undisputed that section 2(a) of the Robinson-Patman Act does not make price discriminations *per se* unlawful. *See Fore-*

most Dairies, Inc. v. FTC, 348 F.2d 674, 680 (5th Cir.), cert. denied, 382 U.S. 959, 86 S.Ct. 435, 15 L.Ed.2d 362 (1965). And although the statute does not "require that the discriminations must in fact have harmed competition," Corn Products Refining Co. v. FTC, supra, 324 U.S. at 742, 65 S.Ct. at 969, it is clear that there can be no violation of section 2(a) if the alleged price differential has no potential for adversely affecting competition. See Janich Brothers, Inc. v. American Distilling Co., supra, 570 F.2d at 862. The naked demonstration of injury to a specific competitor without more is not sufficient to show that a price discrimination "may" substantially lessen competition; the test must always focus on injury to competition. See M.C. Manufacturing Co. v. Texas Foundries, Inc., 517 F.2d 1059, 1067–68 (5th Cir.1975), cert. denied, 424 U.S. 968, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976). See also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977).

Without addressing the dispute about whether section 2(a) requires a mere "possibility" or a more substantial "probability" of injury to competition, see William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 668 F.2d 1014, 1042 & n. 50 (9th Cir.1981), we take note of the language of section 2(a) itself, which compels the conclusion that a prima facie claim for unlawful price discrimination cannot be stated absent an allegation that the discrimination in price may produce injury to competition. Although the Robinson-Patman Act is a prophylactic statute which should be construed broadly, consistent with the policies of the antitrust laws, Great Atlantic & Pacific Tea Co. v. FTC, 440 U.S. 69, 80 n. 13, 99 S.Ct. 925, 933 n. 13, 59 L.Ed.2d 153 (1979), neither section 2(a) nor any other provision of the antitrust laws was intended to protect competitors as opposed to competition. See Mutual Fund Investors, Inc. v. Putnam Management Co., 553 F.2d 620, 627 (9th Cir.1977). Nothing in Foremost's section 2(a) count provides such an allegation or inference of injury to competition. Foremost alleged only that it "has sustained increased cost[s] of doing business" and that "competition by plaintiff in the photofinishing trade has been lessened, restrained and eliminated" (emphasis added).

Injury to a specific competitor is not enough from which a court may infer that an alleged price discrimination may "substantially" injure competition. If Foremost had alleged that it occupied a substantial share of the photofinishing market, nationally or in any relevant geographic sub-market, or that the alleged discrimination was "sufficient in amount to influence ... resale prices" of photographic paper, see FTC v. Morton Salt Co., 334 U.S. 37, 47, 68 S.Ct. 822, 828, 92 L.Ed. 1196 (1948), or that the photofinishing industry operates on relatively low profit margins, see Foremost Dairies, Inc. v. FTC, supra, 348 F.2d at 680, such that the alleged discrimination provided Foremost's competitors with a significant competitive advantage even if it did not directly affect retail prices, the issue would be closer. But Foremost did not. Accordingly, Foremost's section 2(a) claim failed to state a claim for relief.

AFFIRMED.