Richard A. BOBBITT, Plaintiff,

v.

VICTORIAN HOUSE, INC., et al., Defendants.

No. 81 C 3022.

United States District Court,
N. D. Illinois, E. D.

Feb. 16, 1982.

Barry A. Pitler, Barry L. Powell, Chicago, Ill., for plaintiff.

John C. Stiefel, Solomon, Rosenfeld, Elliot, Kenneth F. Levin, Stiefel & Abrams, Ltd., Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Richard A. Bobbitt ("Bobbitt") sues Victorian House, Inc. ("Victorian House") and its President Albert Morlock ("Morlock") seeking:

> (a) appointment of an independent receiver to run Victorian House;
>
> (b) dissolution of Victorian House;
>
> (c) an accounting of corporate funds misapplied or wasted by Morlock; and
>
> (d) an injunction restraining Morlock from mismanaging the affairs of Victorian House, usurping the powers of the board of directors and intruding on the rights of Bobbitt.

Defendants have answered the complaint and filed eight affirmative defenses.[1] Bobbitt has moved to strike those defenses. For the reasons stated in this memorandum opinion and order Bobbitt's motion is granted in part and denied in part.

Two preliminary areas should first be addressed:

First, the Complaint appears to pose a substantive problem. Its prayers for relief just listed as (c) and (d) are asserted against Morlock for his alleged mismanagement of Victorian House and misappropriation of

---

1. Defendants initially filed nine such defenses but have voluntarily withdrawn defense number 5. To avoid confusion this opinion will refer to the eight remaining defenses by their original numbers.

corporate funds. Those allegations charge a breach of fiduciary duties to Victorian House rather than to Bobbitt individually. Ordinarily a stockholder like Bobbitt can bring such an action only in a derivative status. But the Complaint does not in terms allege a derivative lawsuit.[2] Absent Bobbitt's appropriate amendment of the Complaint, this Court must treat this action as one solely for dissolution and receivership.[3]

■ Second, it is constructive as a threshold matter to examine the general role of an affirmative defense. Rule 8(c) requires a party to set forth any affirmative defense in a responsive pleading. Failure to do so may waive the right to present evidence at trial on that defense. *Henry v. First National Bank of Clarksdale*, 595 F.2d 291, 298 n.1 (5th Cir. 1979). In the real world, however, failure to plead an affirmative defense will rarely result in waiver. Affirmative defenses—like complaints—are protected by the direction of Rule 15(a) that courts are to grant leave to amend pleadings "freely . . . when justice so requires." Accordingly, failure to advance a defense initially should prevent its later assertion only if that will seriously prejudice the opposing party.

Nonetheless the very possibility of waiver makes it important (and certainly prudent) to plead all appropriate affirmative defenses. That leads to a definitional question: What is an affirmative defense? Rule 8(c) lists 17 specific defenses but concludes that a party must also plead "any other matter constituting an avoidance or affirmative defense." That creates the sometimes difficult problem of determining what *unspecified* matters are also "affirmative defenses" that must be pleaded separately in an answer. 5 Wright and Miller, Federal Practice and Procedure § 1270 at 292 speaks of an affirmative defense as something that

generally admits the matters in a complaint but suggests some other reason why there is no right of recovery. 2A Moore's Federal Practice ¶ 8.27[3] at 8–250, 8–254 calls it something that raises a matter outside the scope of plaintiff's prima facie case and is thus a matter not raised by a simple denial.

Both those definitions are obviously imprecise. So the cautious pleader is fully justified in setting up as affirmative defenses anything that might possibly fall into that category, even though that approach may lead to pleading matters as affirmative defenses that could have been set forth in simple denials.

■ Both major treatises have taken the same position on that problem. 2A Moore's Federal Practice ¶ 8.27[3] at 8–251 says:

A so-called affirmative defense that is surplusage, in that it merely raises matters already at issue under a denial, may be stricken. But if there is any real doubt about the defendant's right, under his denial, to offer proof of the matters, the affirmative defense should not be stricken.

5 Wright and Miller, Federal Practice and Procedure § 278 at 351–52 puts it this way:

If plaintiff wishes to challenge the propriety of allegations of an affirmative defense, the proper procedure is by a motion to strike; however, that motion should not be granted unless the defense is patently defective. If a defendant makes the mistake of pleading matter as an affirmative defense that could have been raised by denial, there is no reason to penalize him either by granting a motion to strike, which will not promote the disposition of the case on the merits, or by shifting the burden of proof from plaintiff to defendant by invoking the fiction that pleading affirmatively on the matter he intended to assume the burden of proof. This latter conclusion seems

---

**2.** Fed.R.Civ.P. ("Rule") 23.1 specifies the requirements for pleading a derivative action. They have not been met here, though Complaint ¶ 18 alleges the futility of "a demand by the Plaintiff upon the Corporation."

**3.** If this Court were to appoint a receiver, the receiver—acting for the corporation—could of course seek an accounting and other relief from Morlock. But unless and until Bobbitt satisfies Rule 23.1, he will be considered to lack standing to pursue such a claim individually.

particularly appropriate since defendant should be encouraged to plead a defense affirmatively if he is in any doubt as to his ability to put the matter in issue under a denial.

Thus the benefit of any doubt should be given the pleader. Matters labeled affirmative defenses should be stricken only where it is completely certain they have been mistitled.

One final background point should be made. Every affirmative defense is a pleading and therefore subject to all pleading requirements of the Rules. Two are principally relevant:

(1) Under Rule 8(a) an affirmative defense need only set forth "a short and plain statement" of the nature of the defense.

(2) Under Rule 9(b) affirmative defenses involving fraud or mistake must state with "particularity" the circumstances constituting the fraud or mistake.

All those considerations suggest examining each affirmative defense on three levels:

(1) Initially the Court will determine whether the matter is appropriately pleaded as an affirmative defense. Only matters that deserve a clear "no" answer will be stricken to make the pleadings more concise.

(2) If a matter may remain as an affirmative defense the Court will determine if it is adequately pleaded under the requirements of Rules 8 and 9. Any defense inadequately pleaded will be dismissed *without* prejudice to enable defendants to correct that technical deficiency.

(3) Any matter permitted to stand as an affirmative defense will be tested under a standard identical to Rule 12(b)(6). If it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the Complaint, the matter will be stricken as legally insufficient.

*First Affirmative Defense*

■ Defendants allege that "any and all actions of Victorian House with respect to its business were performed in the ordinary course of business and in good faith." Bobbitt contends the question whether Victorian House performed its actions in good faith is irrelevant to the relief he seeks (Bobbitt says he challenges Morlock's acts, not those of the corporation).

Ill.Rev.Stat. ch. 32, § 157.86 ("Section 86") permits a court of equity to liquidate the assets and business of a corporation in a shareholder action if it can be shown that (1) the directors are deadlocked and therefore unable to manage the corporation and irreparable injury is being suffered as a result or (2) the shareholders are deadlocked in voting power and have failed for at least two consecutive annual meeting dates to elect successors to directors or (3) the acts of the directors in control are illegal, oppressive or fraudulent or (4) the corporate assets are being misapplied or wasted. Bobbitt contends the First Affirmative Defense should be dismissed because good faith on the part of Victorian House should not prevent dissolution if he can demonstrate that one of the four situations listed in Section 86 exists.

Bobbitt does not specify on which of the four grounds he seeks dissolution. Indeed the Complaint contains allegations that could satisfy each of the four. But a party is not always able to prove what he alleges. Hence defendants' First Affirmative Defense (and for that matter all the others) will be retained if relevant to any of the four grounds for dissolution.[4]

Section 86(a)(4) provides for dissolution if corporate funds are being "misapplied or wasted." Whether Victorian House carried on its transactions in good faith might conceivably be probative on that score. Frankly defendants' position on this issue appears quite thin. Nevertheless, under the princi-

---

**4.** Of course if Bobbitt sustains any ground for dissolution as to which corporate good faith is irrelevant, the defense will not save defendants.

ples already announced the First Affirmative Defense will stand—at least for the present.

*Second Affirmative Defense*

Defendants allege that "any transactions between Albert J. Morlock and Victorian House were known to and approved by the plaintiff prior to the implementation, and that plaintiff is estopped from complaining of same." Estoppel is, of course, one of the affirmative defenses listed in Rule 8(b) and therefore must be pleaded in defendants' answer.

Dissolution is an exercise of a court's equitable powers, and equitable defenses such as estoppel can affect such exercise. It is possible Bobbitt could have estopped himself from challenging certain corporate transactions.

Bobbitt urges however that defendants have failed to plead the essential elements of an estoppel defense. While an affirmative defense need only be a brief statement, see Form 20 following Fed.R.Civ.P., it must provide Bobbitt with adequate notice of the relevant elements.

Estoppel under Illinois law requires more than knowledge and approval of transactions that form the basis of a complaint. It arises where (1) a party acts, (2) another party reasonably relies on those acts and (3) the latter party thereby changes his position for the worse. 18 I.L.P. Estoppel § 22. Defendants have only advanced the conclusory term "estopped" without alleging the necessary detrimental reliance.[5] Their Second Affirmative Defense is stricken as legally insufficient.

*Third Affirmative Defense*

Defendants allege Bobbitt originally participated actively in the management of

Victorian House, his participation had a deleterious effect upon the company and he moved to Florida under the express understanding that he would not actively participate thereafter in the active management of Victorian House. That allegation speaks at least to Section 86(a)(1), which provides for dissolution in cases of director deadlock.

Again it must be emphasized that dissolution is an equitable remedy. This Court cannot say as a matter of law that an *agreement* by Bobbitt to let Morlock run Victorian House is irrelevant as a possible defense to a claimed injurious deadlock. Defendants' Third Affirmative Defense will stand.

*Fourth Affirmative Defense*

Defendants assert Bobbitt's purpose in bringing this action is to enable him to receive more favorable terms for the sale of his stock in Victorian House. They claim that Bobbitt is simply attempting to bolster his position in negotiating the sale of his stock, so there is not an actual case or controversy cognizable by this Court. As a "defense" that allegation is entirely frivolous. So long as there is a genuine dispute between the parties, the case or controversy requirement is met. Improving settlement prospects is a normal and legitimate concomitant of filing a lawsuit. Defendants' Fourth Affirmative Defense is stricken.

*Sixth Affirmative Defense*

Defendants' Sixth Affirmative Defense alleges this Court is without subject matter jurisdiction because diversity of citizenship is lacking.[6] That contention is clearly an inappropriate affirmative defense. It does nothing more than deny plaintiff's jurisdictional allegation, echoing Paragraph 1 of defendants' Answer:

under *Illinois* law close enough to fraud to require the more stringent pleading standard of Rule 9(c). But the fatal defect in defendants' pleading is the absence of a substantive prerequisite of an estoppel defense.

5. This is not to say that the assertion of estoppel must satisfy Illinois pleading standards. Pleading in a diversity action is a matter of federal law. In that respect some federal courts have held that because estoppel is somewhat akin to intentional deception or constructive fraud the claimant must plead the defense with particularity as required by Rule 9(c). *See, Rubin v. O'Koren,* 621 F.2d 114, 117 (5th Cir. 1980). This Court does not find estoppel

6. Defendants have previously asserted and then withdrawn a jurisdictional challenge based on amount in controversy.

Defendants admit that jurisdiction for the Complaint is purportedly based upon diversity of citizenship, but deny that such jurisdiction exists. . . .

That denial is sufficient to preserve the defense. Accordingly Defendants' Sixth Affirmative Defense is also stricken.

*Seventh Affirmative Defense*

 Defendants' Seventh Affirmative Defense states, "Plaintiff had full knowledge of the acts complained of at or prior to the time of their occurrence, and accordingly as to said acts Plaintiff's Complaint is barred by laches." Laches like estoppel requires more than defendants have alleged— and as with defendants' stricken estoppel defense, the missing ingredient is a detrimental change that makes it inequitable to grant relief. Defendants' own citation, *Pyle v. Ferrell,* 12 Ill.2d 547, 552, 147 N.E.2d 341, 344 (1958) is one of a host of authorities standing for that proposition. 4 ILP Chancery § 118 at 337 ("Prejudice or injury to the adverse party is an essential element of laches. . . .). Defendants' Seventh Affirmative Defense is stricken as legally insufficient.

*Eighth Affirmative Defense*

 Defendants say that any transactions between them were fair and proper. This defense adds nothing to defendants' denial of Complaint ¶ 17, which charges improper self-dealing by Morlock. It does not satisfy the Wright and Miller or Moore's test. It too will be stricken.

*Ninth Affirmative Defense*

Defendants say they have managed the company pursuant to an agreement with Bobbitt at the time he moved to Florida. That allegation simply repeats a portion of defendants' Third Affirmative Defense. Defenses are not made more persuasive by repetition. Defendants' Ninth Affirmative Defense will also be stricken.

*Conclusion*

Bobbitt's motion to strike defendants' eight affirmative defenses is granted as to Affirmative Defenses 2, 4, 6, 7, 8 and 9 and denied as to Affirmative Defenses 1 and 3.