**D.S. AMERICA (EAST), INC. an Illinois corporation, Plaintiff,**

v.

**CHROMAGRAFX IMAGING SYSTEMS, INC., a New York corporation, Defendant.**

**No. CV 93–4913.**

United States District Court, E.D. New York.

Jan. 19, 1995.

Felcher & Felcher by Louis M. DiLuzio, New York City, for plaintiff.

Lisa D. Levine–Shapiro, Roslyn, NY, for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff D.S. America (East), Inc. ("Screen East") brings this diversity action against defendant Chromagrafx Imaging Systems, Inc. ("Chromagrafx") alleging claims for breach of contract. In response to the complaint Chromagrafx asserts eight affirmative defenses and three counterclaims—breach of contract, fraud and antitrust violations. Presently before the Court is Screen East's motion to dismiss Chromagrafx's amended counterclaims pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and to strike the affirmative defenses pursuant to Rule 12(f) thereof.[1]

### I.  BACKGROUND

Screen East alleges in the complaint that it entered into an agreement on or about October 23, 1992 with Chromagrafx, pursuant to

---

1. Chromagrafx initially responded to the complaint by its Answer and Counterclaims, and Screen East initially moved to dismiss the counterclaims and to strike affirmative defenses. In response to that motion, Chromagrafx filed an Amended Answer and Counterclaims, to which Screen East now directs its motion to dismiss and to strike affirmative defenses.

which Chromagrafx agreed to purchase an ISC–2010 Color Input Scanner and related equipment and accessories (the "Scanner") from Screen East (the "Equipment Purchase Agreement"). Complaint ¶ 5. Screen East alleges that it delivered the Scanner to Chromagrafx and completed installation of the Scanner on or about November 20, 1992, but Chromagrafx has not paid for it despite repeated demands for payment. *Id.* ¶¶ 6–9. Screen East asserts claims for breach of contract and goods sold and delivered. In addition, Screen East claims Chromagrafx granted it a security interest in the Scanner, and seeks to enforce its security interest by recovering possession of the Scanner.

Chromagrafx asserts counterclaims for breach of contract, fraud, and violation of § 2(e) of the Clayton Act, as amended by the Robinson–Patman Act, 15 U.S.C. § 13(e). As for its breach of contract counterclaim, Chromagrafx alleges that it entered into an agreement in September 1991, and issued a purchase order, to purchase the Scanner from a corporation previously doing business as "Screen USA," a predecessor of Screen East or a corporation of which Screen East is a part, *see* Amended Counterclaim ¶ 26, for delivery no later than October 30, 1991. *Id.* ¶ 28; *see id.* ¶ 58.[2] Mike Daly ("Daly") of Screen USA had promised Chromagrafx this delivery date prior to the agreement. *Id.* ¶ 35; *see id.* ¶ 58. Chromagrafx intended, as Screen USA knew, to use the Scanner to develop a software program specifically and exclusively to run with the Scanner. *Id.* ¶¶ 29–30. Indeed, at the "Seybold Computer Conference" in California in September 1991, Screen USA permitted Chromagrafx to show the software program on a machine in Screen USA's sales booth as Screen USA advertised the software program and Scanner to the public. *Id.* ¶ 31. In reliance on the promised delivery date and with Screen USA's knowledge, Chromagrafx expended enormous amounts of time and money to develop and market the software program. *Id.* ¶ 33. Nevertheless, based on conversations between Douglas Wyman ("Wyman") of Chromagrafx and Daly and Kennard Cloud of Screen USA, Screen USA put off the October 1991 delivery with excuses, but assured Chromagrafx that it would deliver the Scanner in 1991. *Id.* ¶ 36. Sometime in November 1991, Daly told Chromagrafx that the Scanner was aboard the boat "Hyundi Commander," which would be docking in Los Angeles, California, in 10 days. *Id.* ¶ 37. After investigating this information, Chromagrafx learned that no such boat existed. *Id.* ¶ 38. In or about January 1992, Screen USA advised Chromagrafx that it could not promise any delivery of the Scanner. *Id.* ¶ 39. By that time, Chromagrafx had invested heavily in developing and marketing the software program. *Id.* ¶ 40. Despite approximately 60 responses from the Seybold Computer Conference of persons interested in purchasing the software program, Chromagrafx was forced to tell customers that it could not deliver the program at that time because it could not get a Scanner, causing Chromagrafx to lose credibility and goodwill in the industry. *Id.* ¶¶ 40–42.

By April 1992, Screen USA still had not delivered the Scanner to Chromagrafx. Sometime that month, according to Chromagrafx, Screen USA was restructured, with the result that Screen East is "either a part of or a successor in part to" Screen USA. *Id.* ¶ 26. In May 1992, Screen East "specifically assumed the obligation to fulfill the terms of Chromagrafx [sic] initial purchase order with Screen USA and promised to deliver the Scanner at Chromagrafx's 'earliest convenience.' " *Id.* ¶ 43. In the summer of 1992, Screen East advised Chromagrafx that it would not provide the Scanner unless Chromagrafx became an "authorized reseller" (the "Authorized Dealer Agreement"). *Id.* ¶ 44. To become an authorized reseller, also referred to as a "value added reseller," Chromagrafx had to "purchase a [S]canner: train sales people; develop a marketing plan to both parties' approval, and market the [Scanner]." *Id.* ¶ 45. In return, Screen East agreed to "provide Chromagrafx with sales and marketing support; assist in clos-

---

**2.** There is an apparent typographical error in this paragraph as it specifies "October 10, 1991" as the promised delivery date. However, in later allegations, Chromagrafx refers to the promised delivery date as "by the end of October, 1991," Amended Counterclaim ¶ 33, "no later than October 30, 1991," *id.* ¶ 56, and "prior to October 30, 1991, *id.* ¶ 58.

ing sales; have monthly and quarterly meetings with Chromagrafx to plan sales strategies and review sales; provide Chromagrafx with leads from Screen's trade shows and reader response cards; and keep Chromagrafx informed of product availability and pricing and product changes." *Id.* ¶ 46. Screen East finally delivered the Scanner at the end of October 1992. *Id.* ¶ 47.

In the first counterclaim, Chromagrafx alleges breaches by Screen East based on delay in delivery of the Scanner; defects in the Scanner; and refusal to install appropriate upgrades on the Scanner. *Id.* ¶¶ 50–52. The Scanner is allegedly defective in that it "drops off line in the computer system sporadically." *Id.* ¶ 51. Chromagrafx also alleges breach of the Authorized Dealer Agreement in that, prior to delivery of the Scanner, Screen East failed to provide access to technical issues; while after delivery, Screen East failed to provide adequate technical assistance, never met to plan sales strategies, and never provided sales and marketing support, sales leads or sales assistance, as it "did to other resellers located in the area." *Id.* ¶ 49. As a result of the delay in delivery and the Scanners' defects, Chromagrafx "lost the market for the program and suffered great damage." *Id.* ¶ 53. As a result of the breach of the Authorized Dealer Agreement, Chromagrafx "lost the ability to make sales of the [S]canner." *Id.* ¶ 54.

In its fraud counterclaim, Chromagrafx further alleges that in or about September 1991 Daly "falsely and fraudulently represented to Chromagrafx that the Scanner would be delivered prior to October 30, 1991," resulting in Chromagrafx issuing the purchase order to Screen USA for the Scanner. *Id.* ¶ 58. At the same time, Daly also allegedly falsely represented to Chromagrafx that "Screen"[3] would "provide Chromagrafx with technical assistance and servicing on the Scanner both before and after delivery of the Scanner." *Id.* ¶ 59. Screen USA allegedly

knew these representations were false and made them with intent to deceive Chromagrafx and induce it to commit resources to purchase and market the Scanner. *Id.* ¶ 61. Despite its promise of delivery to Chromagrafx, Screen USA "promised all of the [Scanners] allocated from Japan to this region of the United States to Eastman Kodak Corporation ('Kodak'), for Kodak's retail operation." *Id.* ¶ 60. Consequently, according to Chromagrafx, Screen USA "had to have known that it could not complete the contract as specified with Chromagrafx." *Id.* Unaware that these representations were false, Chromagrafx "was induced to rely upon the delivery of the Scanner to complete the development and marketing of the program, already substantially underway with Screen's knowledge and acquiescence and to act as an authorized dealer and a value added reseller of the Scanner under contract terms that Screen never intended to comply with." *Id.* ¶ 62. Chromagrafx claims that it never would have purchased the Scanner or based the development and marketing of its software program on the Scanner except for the promised October 30, 1991 delivery date and promised technical assistance. *Id.* ¶ 64. In its words, Chromagrafx claims to have been damaged by this fraud "in terms of an effective loss of the ability to sell the program, loss of credibility and good will, and investment costs." *Id.*

In its antitrust counterclaim, Chromagrafx alleges that "Screen"[4] is a distributor of the Scanners, marketing them in interstate commerce. *Id.* ¶ 67. "Screen" is allegedly "a subsidiary of [a Japanese corporation] which actually manufactures the [Scanners] and which during 1991 and 1992, allocated a set number of [S]canners from Japan into the United States." *Id.* ¶ 68. During the "time in question, Screen took all the [S]canners on allocation from Japan and dedicated them to Kodak for Kodak's use in its retail operations in breach of other contractual obligations to

**3.** Although Chromagrafx refers to "Screen" and not specifically to "Screen USA" in its fraud counterclaim, it is clear that the allegations in the fraud counterclaim refer to "Screen USA."

**4.** With one exception, Chromagrafx refers simply to "Screen" in its antitrust counterclaim. The

one exception, paragraph 76, refers explicitly to "Screen East." Although, paragraph 72 appears to refer to Screen USA not Screen East, the Court will assume for purposes of this motion that all allegations in this counterclaim refer to Screen East.

Chromagrafx and to others and in preference thereof." *Id.* ¶ 72. Kodak is an alleged direct competitor of Chromagrafx in the "systems integration business" and in the "general retail market as ... a reseller of the Scanners." *Id.* ¶ 73. Chromagrafx claims that Screen's actions were

> part of a conspiracy to restrain trade in interstate commerce for the [S]canner and a discrimination against Chromagrafx with respect to the timely furnishing of delivery of and services regarding the Scanner in that Screen was, on information and belief, able to deliver the [S]canner to Kodak and other customers in preference to Chromagrafx.

*Id.* ¶ 74. As a result of "Screen's discrimination in furnishing to Chromagrafx the delivery of the [S]canner, Chromagrafx was injured in its business and property...." *Id.* ¶ 75. In addition, Chromagrafx alleges that "Screen East also improperly discriminated in the furnishing of services to Chromagrafx in that it complied with its agreements with competitor resellers of the Scanner and not to Chromagrafx, which impeded Chromagrafx's ability to compete in the interstate resale market for the Scanner." *Id.* ¶ 76.

Chromagrafx asserts the following eight affirmative defenses: (1) Screen East and Screen USA breached "its" contract with Chromagrafx; (2) the Scanner is defective and Screen East has not repaired it or installed appropriate upgrades; (3) Screen East breached its warranty of merchantability and its warranty of fitness for a particular purpose; (4) Screen East and Screen USA breached "their" duty of good faith and fair dealing; (5) Screen East and Screen USA have caused damages to Chromagrafx which far exceed the purchase price of the Scanner; (6) the cost of the trip by Chromagrafx's employee, Brian Hobbs, was supposed to be deducted from the purchase price of the Scanner; (7) Screen East is barred from bringing this action under the doctrines of estoppel and unclean hands; and (8) Screen East and Screen USA breached "its" Authorized Dealer Agreement with Chromagrafx.

Screen East moves to dismiss all of Chromagrafx's counterclaims for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6); to dismiss the fraud counterclaim for failure to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b); and to strike all of the affirmative defenses pursuant to Fed.R.Civ.P. 12(f).

## II. *DISCUSSION*

### A. *Motion to Dismiss*

▮ It is well settled that a complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Maggette v. Dalsheim,* 709 F.2d 800, 803 (2d Cir.1983). Moreover, on a motion to dismiss, all factual allegations of the complaint must be accepted as true and construed favorably to the plaintiff. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) (per curiam); *Stewart v. Jackson & Nash,* 976 F.2d 86, 87 (2d Cir.1992). These principles apply equally to a defendant's pleading asserting counterclaims.

▮ In opposition to Screen East's motion, Chromagrafx submits matter outside the pleading, namely an affidavit by Wyman attaching various correspondence between Chromagrafx and Screen East or Screen USA. Although, on a motion to dismiss, a district court has discretion to consider matter outside the pleading submitted by the parties if it converts the motion to dismiss into one for summary judgment, *see* Fed.R.Civ.P. 12(b), the Court will not consider the Wyman affidavit.

### 1. *Breach of Contract Counterclaim*

Screen East contends (1) that Chromagrafx fails to allege a sufficient basis for imposing liability on Screen East—the only named defendant in the Amended Counterclaim—for Screen USA's breach of the alleged agreement between Chromagrafx and Screen USA; (2) that, in any event, the Equipment Purchase Agreement acts as a novation of the alleged agreement between Chromagrafx and Screen USA, thereby precluding any claim against Screen East for Screen USA's alleged breach; and (3) that

any claim for delay in delivery is subject to a disclaimer clause in the Equipment Purchase Agreement limiting damages arising from delay.[5]

In opposition to Screen East's motion to dismiss, Chromagrafx argues that Screen East misconstrues the breach of contract counterclaim. According to Chromagrafx, Screen East assumes that it cannot be liable to Chromagrafx because (1) it delivered the Scanner to Chromagrafx immediately after the parties executed the Equipment Purchase Agreement, and (2) there is no basis upon which to hold it liable for Screen USA's alleged delay in delivery. In this regard, Chromagrafx maintains that the Amended Counterclaim alleges distinct breaches of contract against Screen East for *Screen East's*—not Screen USA's—delay in delivery, *Screen East's* delivery of defective goods, and *Screen East's* failure to install appropriate upgrades. Regarding the alleged delay in delivery, Chromagrafx argues that the Amended Counterclaim sufficiently alleges that Screen East "undertook to deliver [the Scanner] to Chromagrafx much earlier than the actual delivery date." Defendant–Counterclaimant's Memorandum of Law, at 2. In this respect, the Amended Counterclaim alleges that in May 1992 Screen East "assumed the obligation to fulfill the terms of Chromagrafx [sic] initial purchase order with Screen USA and promised to deliver the Scanner at Chromagrafx's 'earliest convenience.'" Amended Counterclaim ¶ 43. Nevertheless, Screen East did not actually deliver the Scanner until the end of October 1992, after refusing in the summer of 1992 to provide the Scanner unless Chromagrafx became an authorized reseller. *Id.* ¶¶ 44, 47. Regarding the alleged defect, Chromagrafx alleges that the Scanner is defective in that it "drops off line in the computer system sporadically." *Id.* ¶¶ 50–51. Regarding the upgrades, the complaint alleges, without further explanation, that Screen East "failed to install appropriate upgrades." *Id.* ¶ 52.

▪ Construed in a light most favorable to Chromagrafx, the Amended Counterclaim adequately states a claim against Screen East for breach based on delay in delivery and defect in the Scanner. However, the conclusory allegation that Screen East "failed to install appropriate upgrades," *id.* ¶ 52, does not sufficiently allege a breach on this basis, particularly since there are no allegations as to the existence, nature or extent of any obligation by Screen East to "install upgrades" or whether that promise was oral or written. Chromagrafx is granted permission to amend its counterclaim with respect to the allegation in paragraph 52 within 30 days from the date of this order.

▪ To the extent Chromagrafx attempts to hold Screen East liable for any breach by Screen USA, particularly for delay in delivery, this Court agrees with Screen East's contention that paragraphs 26 and 43 of the Amended Counterclaim are not a sufficient basis for holding Screen East liable for Screen USA's delay. Chromagrafx's claim that Screen East "specifically assumed the obligation to fulfill the terms of Chromagrafx initial purchase order with Screen USA," Amended Counterclaim ¶ 43, does not support a finding that Screen East assumed Screen USA's *liability* to Chromagrafx under the purchase order. Similarly, Chromagrafx's conclusory allegation that Screen East is "either a part of or a successor in part to" Screen USA as a result of a restructuring does not, of itself, provide a sufficient basis for finding Screen East liable for Screen USA's alleged breach. *See, e.g., Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala,* 989 F.2d 572, 580 (2d Cir.1993); *Lumbard v. Maglia, Inc.,* 621 F.Supp. 1529, 1534–35 (S.D.N.Y.1985); *see generally* William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* ¶ 7122, at 231 (Stephen M. Flanagan *et al.* eds., perm. ed. 1990). Because it appears conceivable, at least at this stage of the action, that there may be a basis for Chromagrafx to hold Screen East liable for Screen USA's alleged breach, Chromagrafx is granted the right to amend its counterclaim within 30 days of this order to allege such a basis.

---

**5.** By the parties' citations to New York law in their legal memoranda, they apparently agree that New York law governs Chromagrafx's state law breach of contract counterclaim.

As for Screen East's defense of novation (*i.e.*, that the Equipment Purchase Agreement acts as a novation of the agreement between Chromagrafx and Screen USA, thereby precluding any claim against Screen East based on Screen USA's alleged breach), it is well established that whether a novation exists depends on the parties' intention. *See Northville Industries Corp. v. Fort Neck Oil Terminals Corp.*, 100 A.D.2d 865, 474 N.Y.S.2d 122, 125 (2d Dep't 1984), *aff'd*, 64 N.Y.2d 930, 488 N.Y.S.2d 648, 477 N.E.2d 1102 (1985); *see also Trans–Orient Marine v. Star Trading & Marine, Inc.*, 736 F.Supp. 1281, 1283 (S.D.N.Y.1990), *aff'd in part and rev'd and remanded in part*, 925 F.2d 566 (2d Cir.1991). The parties' intention as to whether the Equipment Purchase Agreement was intended to supersede the alleged agreement between Chromagrafx and Screen USA, and extinguish any alleged existing liability of Screen USA thereunder, cannot be determined as a matter of law at this stage of the action. Accordingly, Screen East's motion to dismiss on this ground is denied without prejudice to renewal following discovery.

As for Screen East's defense that the parties agreed to a limitation on damages resulting from delay in delivery, a disclaimer clause, in small print on the back of the Equipment Purchase Agreement, provides in relevant part:

> Notwithstanding any provision contained in this Purchase Agreement to the contrary, [Screen East] shall not be responsible or liable to [Chromagrafx] for any loss or damage resulting from [Screen East's] delayed performance in shipment and delivery of the [Scanner] for any reason, including loss of income and/or profits, incidental, special and consequential damages.

Chromagrafx argues that this clause is unenforceable because it was not "conspicuous," without citing authority, and because of "Screen's" purported "bad faith." Defendant–Counterclaimant's Memorandum of Law, at 2, 13.

Under New York Uniform Commercial Code, parties to a contract may agree to exclude or limit consequential damages upon breach provided such limitation is not "unconscionable." *See* N.Y.U.C.C. § 2–719(3). Although, as Screen East contends, § 2–719(3) does not require that the clause be "conspicuous," in determining unconscionability a court considers many factors, one of which is "whether terms were hidden in fine print." *See, e.g., American Tel. & Tel. Co. v. New York City Human Resources Admin.*, 833 F.Supp. 962, 988–89 (S.D.N.Y. 1993); *American Dredging Co. v. Plaza Petroleum Inc.*, 799 F.Supp. 1335, 1339 (E.D.N.Y.1992); *Fleischmann Distilling Corp. v. Distillers Co.*, 395 F.Supp. 221, 232 (S.D.N.Y.1975). The factors considered in determining "procedural unconscionability" include, *inter alia*, " 'the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was a disparity in bargaining power.' " *American Tel.*, 833 F.Supp. at 988 (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 537 N.Y.S.2d 787, 791, 534 N.E.2d 824, 828 (1988)); *Fleischmann*, 395 F.Supp. at 232. In determining "substantive unconscionability," the " 'question entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged.' " *American Tel.*, 833 F.Supp. at 988–89 (quoting *Gillman*, 537 N.Y.S.2d at 792, 534 N.E.2d at 829); *see also American Dredging*, 799 F.Supp. at 1339 ("In general, unconscionability requires a showing of the absence of meaningful choice on the part of one of the parties together with contract terms that are unreasonably favorable to the other party."). Moreover, § 2–302(2) provides that the parties "shall be afforded a reasonable opportunity to present evidence" where it is claimed or appears to the court the clause may be unconscionable. N.Y.U.C.C. § 2–302(2); *see County Asphalt, Inc. v. Lewis Welding & Eng'g Corp.*, 444 F.2d 372, 379 (2d Cir.), *cert. denied*, 404 U.S. 939, 92 S.Ct. 272, 30 L.Ed.2d 252 (1971); *Fleischmann*, 395 F.Supp. at 232; *New York v. Wolowitz*, 468 N.Y.S.2d 131, 145–46 (2d Dep't 1983). Although unconscionability is rarely found in a contract between mer-

chants, *see American Dredging,* 799 F.Supp. at 1339, because this Court cannot adequately determine the merits of this defense on this motion to dismiss, Screen East's motion as to this defense is denied without prejudice to renewal following discovery.

■ Screen East contends that Chromagrafx fails to state a claim for breach of the Authorized Dealer Agreement because the pleading fails to separately state such a claim. Although the Amended Counterclaim is far from a model of clarity, and does not state this claim separately, Chromagrafx sufficiently alleges that Screen East failed to comply with its obligations under the Authorized Dealer Agreement. The facts alleged are sufficient to state a claim for breach of the Authorized Dealer Agreement, under the liberal pleading requirements of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 8(a) (requiring "a short plain statement of the claim showing that the pleader is entitled to relief").

■ Screen East further argues that Chromagrafx fails to state a counterclaim for breach of warranty, despite Chromagrafx's allegation that the Scanner is defective, *see* Amended Counterclaim ¶¶ 50–51, because (1) Chromagrafx first purported to assert breach of warranty as an affirmative defense in the Amended Answer without obtaining leave to amend the original answer, and (2) the Amended Counterclaim fails to separately plead a counterclaim for breach of warranty. As Screen East contends, Chromagrafx does not plead breach of warranty as a separate counterclaim. However, Chromagrafx does allege that the Scanner is defective and, in its third affirmative defense, that Screen East breached its warranty of merchantability and its warranty of fitness for a particular purpose. *See* Amended Answer ¶ 18. Because this affirmative defense could have been pleaded as a counterclaim in the Amended Counterclaim—which Chromagrafx was per-

mitted to file without leave [6]—the Court will also read it as a counterclaim. *See* Fed. R.Civ.P. 8(c); *Dubied Machinery Co. v. Vermont Knitting Co.,* 739 F.Supp. 867, 871 (S.D.N.Y.1990). Nevertheless, the nature and basis of the breach of warranty must be clarified to withstand dismissal. Because there appears to be some basis alleged to support it, the Court will not dismiss this counterclaim outright. Accordingly, Chromagrafx is granted 30 days from the date of this order to plead separately and clearly a counterclaim based on breach of warranty.

### 2. *Fraud Counterclaim*

As to the fraud counterclaim, Screen East argues that this counterclaim fails as a matter of law because it states nothing more than the alleged breach of contract, and, alternatively, because Chromagrafx fails to allege a sufficient basis for imposing liability on Screen East for Screen USA's acts or omissions. Screen East also contends that Chromagrafx fails to plead the alleged fraud with particularity, as required by Fed. R.Civ.P. 9(b). In opposition, Chromagrafx contends that it alleges, with the requisite particularity, a separable and cognizable claim for fraudulent inducement, and that Screen East may be held liable for Screen USA's alleged misrepresentations.

■ Under New York law,[7] a party cannot maintain a fraud claim if the alleged fraud is merely the breach of contract. *Carlucci v. Owens–Corning Fiberglas Corp.,* 646 F.Supp. 1486, 1491 (E.D.N.Y.1986); *Edwil Industries Inc. v. Stroba Instruments Corp.,* 131 A.D.2d 425, 516 N.Y.S.2d 233, 233 (2d Dep't 1987); *C.B. Western Financial Corp. v. Computer Consoles, Inc.,* 122 A.D.2d 10, 504 N.Y.S.2d 179, 182 (2d Dep't 1986); *Spellman v. Columbia Manicure Mfg. Co.,* 111 A.D.2d 320, 489 N.Y.S.2d 304, 307–08 (2d Dep't 1985). Where the fraud claim is "premised upon an alleged breach of contractual duties

---

**6.** Leave of court was not required because Chromagrafx filed the Amended Counterclaim "before a responsive pleading" was served. *See* Fed. R.Civ.P. 15(a). Screen East's motion to dismiss is not a "responsive pleading" for purposes of Rule 15(a). *See McGruder v. Phelps,* 608 F.2d 1023, 1025 (5th Cir.1979); *see also Miller v. American Export Lines, Inc.,* 313 F.2d 218, 218 n.

1 (2d Cir.1963) (motion for summary judgment is not a responsive pleading for purposes of Rule 15(a)).

**7.** The parties also agree that New York law governs Chromagrafx's state law fraud counterclaim.

and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie." *McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233, 574 N.Y.S.2d 58, 59 (2d Dep't 1991); *see Spellman v. Columbia Manicure Mfg. Co.*, 111 A.D.2d 320, 489 N.Y.S.2d 304, 307–08 (2d Dep't 1985); *Comtomark, Inc. v. Satellite Communications Network, Inc.*, 116 A.D.2d 499, 497 N.Y.S.2d 371, 372 (1st Dep't 1986). Thus, "[a] cause of action for fraud in inducing a contract cannot be based solely upon a failure to perform contractual promises of future acts. An alleged failure to perform such acts is a breach of contract which must be enforced by an action on the contract." *C.B. Western Financial*, 504 N.Y.S.2d at 182. On the other hand, a misrepresentation of present fact, not of future intent, collateral or extraneous to the contract, but which is an inducement to the contract, can give rise to a separate claim of fraudulent inducement. *Deerfield Communications Corp. v. Chesebrough–Ponds, Inc.*, 510 N.Y.S.2d 88, 89, 502 N.E.2d 1003 (1986); *C.B. Western Financial*, 68 N.Y.2d 954, 504 N.Y.S.2d at 182.

■ Chromagrafx maintains, however, that a fraud counterclaim is sufficient if—as it contends is the case here—it is supported by "specific facts tending to show that at the time the defendant made the asserted representations and promises, it never intended to honor its stated intentions." Defendant–Counterclaimant's Memorandum of Law, at 15; *see* Amended Counterclaim ¶ 60. Although a promise made with a "preconceived and undisclosed intention of not performing it" can give rise to a fraudulent inducement claim, *Deerfield Communications*, 510 N.Y.S.2d at 89, 502 N.E.2d at 1004; *Stewart v. Jackson & Nash*, 976 F.2d 86, 88–89 (2d Cir.1992), the promise must be collateral or extraneous to the terms of the agreement, not merely a promise to perform under the express terms of the contract even if made with no intention to abide by the stated

intention. *See McKernin*, 574 N.Y.S.2d at 59; *Spellman*, 489 N.Y.S.2d at 307–08; *Comtomark*, 497 N.Y.S.2d at 372; *see also North Triphammer Development Corp. v. Ithaca Assocs.*, 704 F.Supp. 422, 427 (S.D.N.Y.1989); *Sivel v. Readers Digest, Inc.*, 677 F.Supp. 183, 187 (S.D.N.Y.1988). *But see also Smehlik v. Athletes & Artists, Inc.*, 861 F.Supp. 1162, 1172 (W.D.N.Y.1994) (upholding fraud claim based on an "allegation that the defendant made a promise to perform under the express terms of the contract while intending not to abide by its terms," upon determining that there is a split in authority in New York on this issue). This Court declines to follow contrary authority.

■ Analyzed under these principles, Chromagrafx's allegations of misrepresentations as to delivery date and technical assistance, *see* Amended Counterclaim ¶¶ 58, 59, state nothing more than breaches of promises of future performance that constitute the express terms of the contract, not promises collateral or extraneous to the contract. An alleged failure to perform these acts is a breach of contract; as such, the fraud counterclaim would be merely duplicative of the breach of contract counterclaim. Accordingly, Chromagrafx's fraud counterclaim is dismissed with prejudice.[8]

### 3. *Antitrust Counterclaim*

■ Chromagrafx claims that Screen East violated § 2(e) of the Clayton Act, as amended by the Robinson–Patman Act, 15 U.S.C. § 13(e), which provides

It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to

---

8. Although the alleged misrepresentations are attributed to Screen USA, even assuming Screen East can be held liable for Screen USA's alleged misrepresentations, this counterclaim cannot be sustained as a matter of law as already discussed.

Moreover, based on this determination, the Court need not address Screen East's contention that the fraud counterclaim must be dismissed pursuant to Fed.R.Civ.P. 9(b) for failure to plead fraud with particularity.

all purchasers on proportionally equal terms.

15 U.S.C. § 13(e). In short, § 2(e) prohibits a seller from providing services or facilities in connection with the resale of the seller's product unless such services or facilities are made available on proportionally equal terms to all customers who compete for such product. Section 2(e) "'appl[ies] only to services or facilities connected with the *resale* of the product by the purchaser,'" *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 546 (9th Cir.1983) (quoting *Purdy Mobile Homes, Inc. v. Champion Home Builders Co.*, 594 F.2d 1313, 1317 (9th Cir.1979) (emphasis added)), *cert. denied*, 465 U.S. 1038, 104 S.Ct. 1315, 79 L.Ed.2d 712 (1984), as opposed to the original sale from the seller to the purchaser. *See Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1424 (11th Cir.1990); *Foremost*, 703 F.2d at 546; *L & L Oil Co. v. Murphy Oil Corp.*, 674 F.2d 1113, 1118–19 (5th Cir.1982); *Morris Electronics of Syracuse, Inc. v. Mattel, Inc.*, 595 F.Supp. 56, 64 (N.D.N.Y.1984); *O'Connell v. Citrus Bowl, Inc.*, 99 F.R.D. 117, 121 (E.D.N.Y. 1983). Thus, "§ 2(e) is violated neither by discriminatory deliveries of products, nor by discriminatory allocation of products." *Morris*, 595 F.Supp. at 65; *see L & L Oil*, 674 F.2d at 1118–19; *David R. McGeorge Car Co. v. Leyland Motor Sales, Inc.*, 504 F.2d 52, 55 (4th Cir.1974), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1430, 43 L.Ed.2d 674 (1975).

A review of the Amended Counterclaim demonstrates that Chromagrafx primarily alleges discriminatory delivery and discriminatory allocation of the Scanner. Indeed, paragraph 75 alleges that Chromagrafx was injured in its business by "Screen's discrimination in furnishing to Chromagrafx delivery of the [S]canner." Amended Counterclaim ¶ 75. Paragraphs 72 and 74 are of similar import. To the extent this counterclaim alleges discriminatory delivery or discriminatory allocation of the Scanner, it fails as a matter of law, and must be dismissed. *See Morris*, 595 F.Supp. at 65. Chromagrafx's use of the phrase "furnishing" in paragraph 75 does not remedy this defect.

Chromagrafx does include, however, an allegation that "Screen East ... discriminated in the *furnishing of services* to Chromagrafx in that it complied with its agreements with competitor resellers of the Scanner and not to Chromagrafx, which impeded Chromagrafx's ability to compete in the interstate resale market for the Scanner." *Id.* ¶ 76 (emphasis added). Nevertheless, this conclusory and vague allegation is not sufficient to state a claim for violation of § 2(e). There is no allegation of any *resale* of the Scanner by any alleged competitor reseller. *See Foremost*, 703 F.2d at 546; *Morris*, 595 F.Supp. at 65. In addition, there are no allegations as to what, if any, "services or facilities" were furnished the "competitor resellers" "upon terms not accorded to all purchasers on proportionally equal terms." *Compare Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1144 (5th Cir.1992) (complaint failed to plead § 2(e) claim), with *Hartley & Parker, Inc. v. Florida Beverage Corp.*, 307 F.2d 916, 922 (5th Cir.1962) (complaint adequately pleaded § 2(e) claim). It is not even clear whether Kodak, to which the Scanners were allegedly allocated and delivered, is one of the "competitor resellers" allegedly furnished "services" not furnished Chromagrafx. Accordingly, this counterclaim is dismissed without prejudice to Chromagrafx's right to amend within 30 days of the date of this order as to the alleged discriminatory furnishing of services identified in paragraph 76.

### B. *Motion to Strike*

On a motion under Rule 12(f), the court may strike from any pleading any "insufficient" defense. Fed.R.Civ.P. 12(f). A motion to strike an affirmative defense is decided on the basis of the pleadings alone. *National Union Fire Ins. Co. v. Alexander*, 728 F.Supp. 192, 203 (S.D.N.Y.1989). Affirmative defenses are subject to the general rules of pleading; consequently, a party "shall state in short and plain terms the party's defenses." Fed.R.Civ.P. 8(b); *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 737 (N.D.Ill.1982). An affirmative defense must sufficiently apprise the opposing party of the nature of the defense, providing the opposing party with adequate notice of the relevant elements of the defense. *See*

*Bobbitt,* 532 F.Supp. at 737–38. An affirmative defense is legally "insufficient" if, as a matter of law, it cannot succeed under any circumstances. *Id.* at 737. However, defenses that are inadequately pleaded may be dismissed without prejudice to enable the pleader to correct the technical deficiency. *Id.*

Based on a review of Chromagrafx's pleading, this Court finds that the first and eighth affirmative defenses are legally deficient to the extent they are based on breach by Screen USA. Otherwise, these affirmative defenses are sufficiently pleaded in light of the allegations in the Amended Counterclaim.

The third affirmative defense, as discussed above, needs further clarification as to the nature and basis of the alleged breach of warranty.

The second and fifth affirmative defense is redundant of the first and third affirmative defenses.

■ The fourth affirmative defense is deficient to the extent it is based on alleged conduct of Screen USA, and is insufficient as against Screen East since there are no allegations in the pleading of "dishonest purpose" or other similar conduct of Screen East. *See, e.g., Middle East Bank, New York Branch v. Harmony Sportswear, Inc.,* No. 93 Civ. 228, 1994 WL 74057, at *6 (S.D.N.Y. Mar. 10, 1994) (dismissing affirmative defense and counterclaim for breach of the implied covenant of good faith and fair dealing where there was no proof of "dishonest purpose or sinister intent" of plaintiff; citing *Kalisch–Jarcho, Inc. v. New York,* 58 N.Y.2d 377, 461 N.Y.S.2d 746, 750 & n. 5, 448 N.E.2d 413 (1983)).

■ The sixth affirmative defense is technically deficient because it fails to provide sufficient notice of the basis for, or amount of, the claimed deduction from the purchase price for Chromagrafx's employee's trip. ʼ

■ As for the seventh affirmative defense, Chromagrafx alleges that Screen East is "barred from bringing an action under the doctrines of *estoppel* and *unclean*

*hands.*" Amended Answer ¶ 22 (emphasis added). Pleading the words "estoppel" and "unclean hands" without more, as Chromagrafx has done, is not a sufficient statement of these defenses. *See Telectronics Proprietary, Ltd. v. Medtronic, Inc.,* 687 F.Supp. 832, 841 (S.D.N.Y.1988). Chromagrafx gives no indication to Screen East as to how either of these defenses bars any of Screen East's claims.

Accordingly, the first and eighth affirmative defenses, to the extent they are based on breach by Screen USA, are stricken without prejudice to Chromagrafx's right to amend within 30 days from the date of this order (provided Chromagrafx can allege a basis for holding Screen East liable for Screen USA's alleged breach); the second and fifth affirmative defense are stricken; and the third, fourth, sixth and seventh affirmative defenses are stricken without prejudice to Chromagrafx's right to amend within 30 days from the date of this order.

## III. *CONCLUSION*

For the reasons above, plaintiff's motion to strike the affirmative defenses is granted in part and denied in part as follows: (1) the first and eighth affirmative defenses, to the extent they are based on breach by Screen USA, are stricken without prejudice to Chromagrafx's right to amend within 30 days from the date of this order (provided Chromagrafx can allege a basis for holding Screen East liable for Screen USA's alleged breach); the second and fifth affirmative defense are stricken; and the third, fourth, sixth and seventh affirmative defenses are stricken without prejudice to Chromagrafx's right to amend within 30 days from the date of this order. Plaintiff's motion to dismiss (1) is granted in part and denied in part as to the breach of contract counterclaim as set forth above; (2) granted as to the fraud counterclaim, which is dismissed with prejudice; and (3) granted as to the antitrust counterclaim, which is dismissed without prejudice to Chromagrafx's right to amend within 30 days of the date of this order as to the alleged

discriminatory furnishing of services identified in paragraph 76.

SO ORDERED.