METROPOLITAN PROPERTY & CA-SUALTY INSURANCE CO., as subrogee of Kenneth and Abby Kenigsberg, Plaintiff,

v.

BUDD MORGAN CENTRAL STATION ALARM CO., INC. Defendant.

No. CV 98–7560.

United States District Court,
E.D. New York.

May 5, 2000.

Cozen & O'Connor, by Elaine M. Rinaldi, Philadelphia, PA, for Plaintiff.

Dubois, Billig, Loughlin, Conaty & Weisman, by Paul S. Gruvman, Mineola, NY, for Defendant.

WEXLER, District Judge.

Plaintiff Metropolitan Property and Casualty Insurance Company ("Metropolitan") commenced this diversity action, as subrogee to the rights of Kenneth and Abby Kenigsberg, against defendant Budd Morgan Central Station Alarm Company, Inc.("Budd Morgan"). Budd Morgan moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below,

the motion is granted in part and denied in part.

## BACKGROUND

### I. *The Alarm Company and the Contract*

Budd Morgan is a corporation that designs, manufactures, sells, installs, and monitors fire and burglar alarm systems. In February 1985, Budd Morgan entered into a contract with Abby and Kenneth Kenigsberg (the "Kenigsbergs") for the monitoring of their existing home security system. The contract refers to the approximate date of installation as "unknown," and states that Budd Morgan was undertaking to provide central station monitoring a "customer owned alarm system."

As is the case with many contracts of this nature, the Kenigsbergs contract with Budd Morgan (the "Contract") contained a provision absolving Budd Morgan from liability due to losses from, *inter alia*, fire. This exculpatory clause read as follows:

> The parties agree that Lessor [Budd Morgan] is not an insurer and no insurance coverage is offered herein. Lessee's [the Kenigsbergs'] payments to Lessor are for the installation, rental, service, and monitoring of a central station transmitter designed to reduce certain risks of loss, though Lessor does not guarantee that no loss will occur. Lessor is not assuming liability and therefore shall not be liable to Lessee for any loss or damages sustained by Lessee as a result of burglary, theft, hold up, fire, equipment failure, or any other cause whatsoever, regardless of whether or not such loss or damage was caused by or contributed to by Lessor's negligent performance or failure to perform any obligation. The parties agree that there shall be no third party beneficiaries of this contract.

The Contract also contained a clause limiting Budd Morgan's liability in the event that the eventualities referred to in the Contract occurred. That clause states:

> The parties agree that the alarm system and central station transmitter is not designed or guaranteed to prevent loss by burglary, theft and other illegal act of third parties, or loss by fire. If, notwithstanding the terms of this agreement, there should arise any liability on the part of the Lessor as a result of theft, hold up, fire, smoke, or any other cause whatsoever, regardless of whether or not such loss, damage, or personal injury was caused by or contributed to by Lessor's negligent or gross negligent performance or failure to perform any obligation, such liability shall be limited to an amount equal to one half the yearly payment paid by Lessee at the time such liability is fixed, or to the sum of $250.00 whichever is greater.

The Contract gave the Kenigsbergs the option of negotiating for the imposition of greater liability on Budd Morgan. However, it was provided that a separate contract would have to be agreed upon and the Kenigsbergs would be required to pay an additional sum of money "consonant with the increase of liability." The Kenigsberg never exercised this option.

The Contract also contained language regarding Budd Morgan's disclaimer of any breach of warranty liability. In a paragraph bearing the heading "No Warranties or Representations: Lessee's Exclusive Remedy," the Contract provides:

> Lessor does not represent nor warrant that the alarm system and central office monitoring will prevent any loss, damage or injury to person or property, by reason of burglary . . . or other cause or that the alarm system will in all cases provide the protection for which it is installed or intended. Lessee acknowledges that Lessor is not an insurer, and the Lessee assumes all risk for loss or damage to Lessee's premises or its content. Lessor has made no representations or warranties, and hereby disclaims any warranty of merchantability or fitness for any particular use. Lessee's exclusive remedy for Lessor's de-

fault hereunder is to require Lessor to repair or replace, at Lessor's option, any equipment covered by this agreement which is nonoperational.

## II. *The Fire*

On December 11, 1997, a fire occurred at the Kenigsberg residence. Mrs. Kenigsberg, who was asleep in the den where the fire started, testified at her deposition that she noticed smoke emanating from behind a sofa. She overturned the sofa, observed a heavier concentration of smoke and realized that a fire had started. Thinking that she could douse the flames on her own, Mrs. Kenigsberg went to the kitchen to fill a pot with water. However, when Mrs. Kenigsberg returned to the den, the sofa was completely engulfed in flames.

Realizing that she would not be able put the fire out, Mrs. Kenigsberg went to the phone and attempted to call for assistance, but there was no dial tone. She grabbed her pets and drove her car to several neighbors' houses to call the fire department. It appears that a nanny at one of these houses called 911, because when Mrs. Kenigsberg caught the attention of a local police car she was informed that fire trucks were on the way.

Despite the arrival of the fire department, the Kenigsberg home and much of the personal property contained therein was destroyed. At her deposition, Mrs. Kenigsberg estimated the time that elapsed between leaving her home and the arrival of the fire trucks was no more than six minutes.

## III. *The Insurance Company Payment and Institution of This Action*

After the fire, Metropolitan paid a claim made by the Kenigsbergs in excess of $600,000. Metropolitan thereafter commenced this action, as subrogee to the rights of the Kenigsbergs, to collect the amount paid on the claim.

Metropolitan's complaint contains three causes of action—negligence, gross negli-

gence and breach of warranty. The factual allegations of the complaint aver, essentially, that Budd Morgan failed to properly install, design, connect, maintain, test and inspect the alarm system at the Kenigsbergs. The factual allegations stated in support of the negligence claim aver that Budd Morgan performed the above-referenced activities in a negligent manner and the gross negligence claim asserts that they were performed in a "wilful and wanton" manner. The complaint does not allege that the actions of Budd Morgan started the fire. Instead, it is alleged that, "as a direct and proximate result" of the actions complained of, the fire at the Kenigsbergs "spread undetected resulting in severe and extensive damage and destruction."

## IV. *The Motion for Summary Judgment*

Budd Morgan moves for summary judgment regarding all counts in Metropolitan's complaint. In support of its motion, Budd Morgan relies upon the exculpatory language in the Contract.

In opposition to the motion, Metropolitan argues that the Contract is an unenforceable contract of adhesion. In the event that the Contract is enforceable, Metropolitan acknowledges that the Contract language bars recovery for negligent central station monitoring. It is argued, however, that Metropolitan has raised a triable issue of fact as to Budd Morgan's gross negligence. Additionally, Metropolitan argues that it has set forth facts of negligence that fall outside of the Contract.

The court considers the enforceability of the Contract as well as the viability of Metropolitan's various claims below.

## DISCUSSION

### I. *Legal Principles*

#### A. *Standards for Motion for Summary Judgment*

Summary judgment is appropriate when the court determines that no genuine issue

of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986). Where reasonable inferences may be drawn from the record, the court will do so in favor of the non-moving party. *Fagan v. New York State Gas and Electric Co.*, 186 F.3d 127, 132(2d Cir.1999). Therefore, it is the moving party's burden to show that no issue of fact exists. *McLee v. Chrysler Corp.*, 109 F.3d 130, 134(2d Cir.1997).

## B. *Enforceability of the Contract*

■ Metropolitan argues that the Contract is unenforceable because it is an unconscionable contract of adhesion. The court disagrees.

■ An unconscionable contract is one that is "so grossly unreasonable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 791, 534 N.E.2d 824 (1988). To establish unconscionability there must be a showing of both substantive and procedural unconscionability. *Id.*

■ Substantive unconscionability requires looking at the substance of the bargain and deciding whether the "terms were unreasonably favorable to the party against whom unconscionability is urged." *D.S. America (East), Inc. v. Chromagrafx Imaging Systems, Inc.*, 873 F.Supp. 786, 794 (E.D.N.Y.1995), quoting, *AT & T v. New York City Human Resources Admin.*, 833 F.Supp. 962, 988–989 (S.D.N.Y.1993). Procedural unconscionability is analyzed by considering a number of factors, including: (1) the size and setting of the transaction; (2) whether deceptive or high pressured tactics were used; (3) the use of fine print; (4) the experience and education of the party claiming unconscionability, and (5) whether there was a disparity in bargaining power. *D.S. America (East), Inc. v. Chromagrafx Imaging Systems, Inc.*,

873 F.Supp. 786, 794 (E.D.N.Y.1995), quoting, *AT & T*, 833 F.Supp. at 988.

### i. *There Is No Showing of Substantive Unconscionability*

New York courts routinely uphold limitations of liability contained in alarm company contracts. *See, e.g., Federal Insurance Co. v. Honeywell Inc.*, 243 A.D.2d 605, 606, 663 N.Y.S.2d 247, 248 (2d Dept. 1997). Contractual language upheld by New York courts includes language strikingly similar to the language at issue here. *E.g., Fireman's Fund Ins. Co. v. ADT Security Systems, Inc.*, 847 F.Supp. 291, 292–93 (E.D.N.Y.1994).

The rationale for enforcing these limitations of liability lies in the fact that alarm companies are not insurers and exculpatory clauses allow the companies to provide affordable systems and services to their customers. *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 544, 583 N.Y.S.2d 957, 962, 593 N.E.2d 1365 (1992); *Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 76 N.Y.2d 220, 227, 557 N.Y.S.2d 286, 289, 556 N.E.2d 1093 (1990). Were the companies to be held liable as insurers, they certainly could not provide such service. *See Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 49 (2d Cir.1993) (price paid to alarm company does not "include a sum designed to anticipate the possible need to pay the purchaser the value of the property that the system is designed to protect").

In view of the fact that contracts such as the one entered into by the Kenigsbergs are routinely enforced, the court rejects any claim that the Contract is substantively unconscionable. *See Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 49 (2d Cir.1993) (clause limiting alarm company's liability is not unconscionable); *Advance Burglar Systems Inc., v. D'Auria*, 110 A.D.2d 860, 862, 488 N.Y.S.2d 416, 418 (2d Dept.1985) (same).

### ii. *There Is No Showing of Procedural Unconscionability*

Nor can it be concluded that the Contract is procedurally unconscionable. Although the print is small, Metropolitan has failed to establish that the print size violates state law. Indeed, it offers no proof in this regard. Nor is there evidence that deceptive or high pressure tactics were employed when the Contract was signed. Moreover, the language of the Contract is in no way ambiguous. It does not require one to "resort to a magnifying glass and a lexicon," *Dubovsky & Sons, Inc. v. Honeywell, Inc.*, 89 A.D.2d 993, 995, 454 N.Y.S.2d 329, 331 (2d Dept.1982), quoting, *Gross v. Sweet*, 49 N.Y.2d 102, 107, 424 N.Y.S.2d 365, 400 N.E.2d 306 (1979), and contains clear terms regarding the intent of the parties to limit Budd Morgan's liability. *Dubovsky & Sons*, 89 A.D.2d 993, 995, 454 N.Y.S.2d 329, 331.

Based on the foregoing, the court rejects the argument that unconscionability prohibits enforcement of the Contract.

### iii. *Gross Negligence*

A finding that the Contract's exculpatory language is enforceable does not end the court's inquiry. There are situations where an alarm company cannot escape liability by reliance on contractual exculpatory language. Specifically, where damages result from "grossly negligent conduct," public policy forbids the enforcement of exculpatory clauses. *Colnaghi v. Jewelers Protection Services, Ltd.*, 81 N.Y.2d 821, 823, 595 N.Y.S.2d 381, 382, 611 N.E.2d 282, 283 (1993); *Hartford Ins. Co. v. Holmes Protection Group*, 250 A.D.2d 526, 527, 673 N.Y.S.2d 132, 133 (1st Dep't 1998); *Arell's Fine Jeweler's, Inc. v. Honeywell, Inc.*, 147 A.D.2d 922, 923, 537 N.Y.S.2d 365, 366 (4th Dep't 1989).

In *Colnaghi U.S.A., Ltd. v. Jewelers Protection Services, Ltd.*, 81 N.Y.2d 821, 824, 595 N.Y.S.2d 381, 383, 611 N.E.2d 282 (1993), the New York Court of Appeals articulated the type of conduct necessary to create an issue of fact regarding gross negligence. The Court there focused on the "recklessness" necessary to show gross negligence in the installation or maintenance of an alarm system. The court noted that, in the context of an alarm contract, the conduct complained of must "smack" of "intentional wrongdoing." *Colnaghi*, 81 N.Y.2d at 824, 595 N.Y.S.2d at 383, 611 N.E.2d 282; *Fireman's Fund*, 847 F.Supp. at 296.

Where an alarm company moves for summary judgment in reliance on an exculpatory clause the party seeking to defeat summary judgment must introduce evidence raising a genuine issue of fact regarding the alarm company's gross negligence. *Fireman's Fund*, 847 F.Supp. at 296. Generally, no issue of gross negligence is raised where the claim is based upon either inappropriate installation of an alarm system or an inappropriate response to an alarm.

For example, in *Colnaghi*, the Court of Appeals held that the allegation that the defendant alarm company failed to wire a skylight window did not raise an issue of fact regarding the company' gross negligence. *Colnaghi*, 81 N.Y.2d at 824, 595 N.Y.S.2d at 383, 611 N.E.2d 282. Similarly, In *David Gutter Furs v. Jewelers Protection Servs., Ltd.*, 79 N.Y.2d 1027, 584 N.Y.S.2d 430, 594 N.E.2d 924 (1992), an expert opinion that the defendant alarm company should have installed additional motion detectors and a shock sensor failed to raise an issue of fact regarding gross negligence. 79 N.Y.2d at 1029, 594 N.E.2d at 924. *See also Stuart Rudnick, Inc. v. Jewelers Protection Servs., Ltd.*, 194 A.D.2d 317, 317, 598 N.Y.S.2d 235, 236 (1st Dept 1993) (failure to maintain video surveillance over safety deposit boxes was not sufficient allegation of gross negligence); *Hartford Ins. Co. v. Holmes Protection Group*, 250 A.D.2d 526, 528, 673 N.Y.S.2d 132, 134 (1st Dep't 1998) (conduct attributable to a plausible policy regarding false alarms "though made riskier by possibly negligent understaffing" did not raise an issue of fact regarding gross negligence).

On the other hand, a sufficient issue regarding gross negligence has been held to have been raised in cases referred to as including "outrageous acts of folly." *Hartford Ins. Co.*, 250 A.D.2d at 528, 673 N.Y.S.2d at 134 (1st Dep't 1998). Examples of such incidents include divulging a security code to burglars giving a false name or instructing a guard having difficulty entering a building to "forget" an assignment. *See id.*

## ANALYSIS

### I. Characterization of Metropolitan's Claims

Before turning to decision on Budd Morgan's motion, the court notes that Metropolitan's claims are properly grouped in two categories. First, there are those claims falling within the scope of the Contract. Because Budd Morgan's contractual obligation consisted only of providing central station monitoring of the Kenigsberg system, this category of claims includes any claim that Budd Morgan breached its duties regarding central station monitoring of the Kenigsberg's alarm system. Second are any claims arising from activities undertaken by Budd Morgan that fall outside of the Contract's provisions. This category, which is not governed by the Contract's exculpatory provisions, includes any claim arising from the performance of service and maintenance duties undertaken by Budd Morgan.

### II. The Expert Affidavits

The parties have submitted voluminous exhibits in support of their respective positions. Relevant to both categories of claims raised by Metropolitan (both contractual and outside of the Contract) are expert affidavits submitted by the parties in support of their respective positions. Metropolitan relies on the expert affidavit of Richard Fedor, a "Security Alarm Designer and Installer," the ("Fedor Affidavit"). Budd Morgan relies upon its security and alarm expert, Jeffrey Zwirn (the "Zwirn Affidavit").

The Fedor Affidavit assumes, for the most part, that Budd Morgan was solely responsible for the installation, service, repair and monitoring of the Kenigsberg alarm system. Fedor charges Budd Morgan with, *inter alia*, failing to properly wire the alarm control panel, failing to properly program the control panel, installing an improper fire reset switch, failing to provide proper instructions to the Kenigsbergs, failing to replace a damaged fuse and failing to properly ground the alarm panel. The Fedor Affidavit concludes that various deviations from industry practices including improper "installation, service, testing, maintenance and monitoring" of the system amounted to a "gross deviation from standards and manufacturers recommendations and accepted industry standards and practices."

Budd Morgan counters the Fedor Affidavit with the Zwirn Affidavit. The Zwirn Affidavit points out that Budd Morgan did not install the alarm system but agreed only to provide central station monitoring for the system. The Zwirn Affidavit counters each of the allegations in the Fedor Affidavit regarding the problems with the system and notes that thirty-nine months prior to the fire Budd Morgan advised the Kenigsbergs that the entire system should be overhauled. The Kenigsbergs, however, chose not to follow this recommendation.

The Zwirn Affidavit also discusses the limited service provided to the Kenigsberg alarm system by Budd Morgan. Additionally, the Zwirn Affidavit includes the assertion that the Kenigsberg alarm system transmitted alarm signals to the central station in January of 1995—a date that is alleged to be after the last time Budd Morgan did any work on the system.

### III. Resolution of the Motion for Summary Judgment

#### A. Claims Arising Under the Contract

##### i. Negligence Claims

Having held the exculpatory clauses of the Contract valid, the court must grant

Budd Morgan's motion for summary judgment on any claim of negligent central sation monitoring. The Contract, which is clearly enforceable, specifically absolves Budd Morgan of any liability for ordinary negligence. Accordingly, to the extent it is based upon negligent central station monitoring, the court dismisses the negligence count of Metropolitan's complaint.

### ii. Breach of Warranty

The Court dismisses any claim by Metropolitan based upon breach of warranty. The Contract specifically disclaims all warranties. Because the Contract is fully enforceable, the Court dismisses the breach of warranty count in Metropolitan's complaint.

### iii. Gross Negligence

To defeat the motion for summary judgment on this remaining contractual count, Metropolitan must show that there exists a triable issue of fact regarding Budd Morgan's gross negligence in its duties regarding central station monitoring. Metropolitan seeks to create the required issue through the Fedor Affidavit.

■ The court has examined both the Fedor and Zwirn affidavits and all of the documents annexed thereto. Upon such review, the court holds that the question of gross negligence is not sufficiently clear to decide on the basis of the bare documents alone. Accordingly, the court holds that the more prudent course to follow is to allow Metropolitan to proceed to trial with its claim of gross negligence. At trial, Metropolitan will be required to meet the high burden of showing that Budd Morgan's conduct "smacks" of "intentional wrongdoing" as required by New York law. *Colnaghi*, 81 N.Y.2d at 824, 595 N.Y.S.2d at 383, 611 N.E.2d 282; *Fireman's Fund*, 847 F.Supp. at 296. The issue of gross negligence will no doubt be made clear at trial and may lead to a renewed motion for summary judgment at the close of Metropolitan's case. A ruling on the issue at this juncture, however, is premature.

### B. Claims Falling Outside of the Contract

To the extent that Metropolitan has any claims falling outside of the Contract (and, therefore, the contractual limitation of liability), those claims must arise from the particular services performed on the Kenigsberg alarm system. Metropolitan can defeat summary judgment on these claims if it can create an issue of fact as to whether the services performed on the Kenigsberg system caused the system to fail to operate at the time of the fire.

Important to the disposition of such claims is the fact detailed in the Zwirn Affidavit, and uncontroverted by Metropolitan, that the fire alarm operated properly in 1995—after Budd Morgan's last service call and prior to the December 1997 fire. Equally important is the fact that while the Fedor Affidavit raises a litany of alleged deficiencies in the Kenigsberg alarm system, it fails to establish any link between the particular services performed (outside of the Contractual monitoring service) and the alleged failure of the system.

■ The court holds that because Metropolitan has not linked any of the Budd Morgan service calls to a failure of the system to function at the time of the 1996 fire, there is no issue of fact regarding Budd Morgan's liability for acts performed outside of the contractual central station monitoring. Accordingly, the court grants Budd Morgan summary judgment regarding any claim falling outside of the Contract.

### CONCLUSION

For the reasons stated above, Budd Morgan's motion for summary judgment is granted in part and denied in part. All claims of negligence, whether based upon the Contract or falling outside thereof are dismissed. The court also dismisses all claims alleging breach of warranty. Met-

ropolitan may proceed to trial on its claim of gross negligence only.

SO ORDERED